751 So.2d 196 (2000)
Charles L. STEWART, Petitioner,
v.
BEE-DEE NEON & SIGNS, INC., et al., Respondents.
No. 1D99-801.
District Court of Appeal of Florida, First District.
March 6, 2000.
*198 Mark N. Tipton of Daniel L. Hightower, P.A., Ocala, for Petitioner.
Randy Fischer of Boehm, Brown, Seacrest, Fischer & LeFever, P.A., Ocala, for Respondents.
BARFIELD, C.J.
The petitioner, a workers' compensation claimant, seeks certiorari review of an order disqualifying the law firm representing him because it hired a nonlawyer employee of the law firm representing the employer and carrier (E/C). We grant the petition and quash the order.
The pertinent facts, as found by the judge of compensation claims (JCC), are essentially not in dispute. While still at the former firm, the employee (a paralegal/legal assistant) had been assigned work involving the claimant's case which "would have required her to come into *199 contact with privileged materials, including attorney-client communications and work product." The employee was not called to testify by either side. No evidence was presented that she had had any contact with the claimant's file at the hiring firm, or that she had disclosed any confidential information to anyone. Two days after she began work, and one day after the former firm filed the motion for disqualification, the head of the hiring firm sent the employee an interoffice memo affirming the office policy "that any information or knowledge that you acquired about a particular case while you were employed by a different law firm is confidential and I expect you to maintain that confidence." His response to the motion for disqualification stated that he had "instructed [the employee] to maintain the confidentiality about any information or knowledge she came into possession of while employed by prior law firms" and that neither he "nor anyone else in this law firm has any intention of asking [the employee] or any other person who has been employed by another law firm to breach the confidentiality requirements of the Rules of Professional Conduct in this or any other case." He testified at the hearing on the motion for disqualification that "[w]e make a special point not to put a lawyer or a paralegal on a case that they worked on the other side of before coming to work for me" and "that's to insure that there's no appearance of impropriety." He stated that he did not believe that the employee had "told any co-workers anything about this case."
In his order, the JCC found that "at all times pertinent thereto," the hiring firm had "established appropriate screening mechanisms to prevent [the employee] from any involvement with representation of the Claimant in this case and from revealing any of the information which she might have obtained as an employee of [the former firm]." He concluded that "no ethical violation has occurred" and that the hiring firm "has taken those steps which a responsible firm should to ensure that there is no impropriety," citing City of Apopka v. All Corners, Inc., 701 So.2d 641 (Fla. 5th DCA 1997). He noted the court's observation in Esquire Care, Inc. v. Maguire, 532 So.2d 740, 741 (Fla. 2d DCA 1988), that "the disqualification of a party's chosen counsel is a harsh sanction, and an extraordinary remedy which should be resorted to sparingly." He stated that he personally thought that disqualification was not warranted because he was "persuaded that [the hiring firm] has neither committed any ethical violations nor obtained any unfair advantage over the other side which would be remedied by removal of the Claimant's attorney."
Nevertheless, citing the "utmost consideration" that should be given to "the perception of clients and the public ..., especially in these times where the public perception of legal integrity is to some extent eroding," and the statement in Koulisis v. Rivers, 730 So.2d 289 (Fla. 4th DCA 1999), that "close cases under Rule 4-1.10(b) [Florida Rules of Professional Conduct] will be decided in favor of disqualification to preserve the integrity of a fair adversary system," the JCC "reluctantly" concluded that disqualification was appropriate, citing also Lackow v. Walter E. Heller Co., 466 So.2d 1120 (Fla. 3d DCA 1985), which had relied upon Canon 9 of the Florida Code of Professional Responsibility ("A Lawyer Should Avoid Even the Appearance of Professional Impropriety"). He opined that the effect of his decision, if upheld, "may well unfairly restrict employment opportunities for lawyers, legal assistants and secretaries, especially in relatively smaller communities like Ocala where this incident occurred," and acknowledged that "if the legal standard used by the Second and Fifth District Courts of Appeal is adopted by the First District Court of Appeal or the Florida Supreme Court, then a different conclusion would be in order."
This case requires us to enunciate the legal standard to be applied in determining whether the hiring of a nonlawyer *200 employee of an opposing firm requires disqualification of the hiring firm. Taken at face value, the conflicting standards adopted by our sister courts seem to define the outer boundaries of resolution of this issue: Lackow requires disqualification of the hiring firm once the employee is shown to have been "exposed" to confidential information at the former firm which is material to the case in which the firms oppose each other; Koulisis requires disqualification of the hiring firm once the employee is shown to have "actual knowledge" of confidential information at the former firm which is material to the case in which the firms oppose each other; Esquire Care and City of Apopka require disqualification only when the hiring firm is shown to have obtained material confidential information from the employee, thereby gaining an "unfair advantage." However, a closer look at these opinions in the context of the factual and procedural circumstances in which they arose suggests a more central position which balances the concerns expressed by our sister courts and by others.
In Lackow, the motion to disqualify was based upon the hiring of a legal secretary who had been exposed to confidential information in the case at the former firm and who had actively worked on the case for the hiring firm. The trial court denied the motion, citing cases supporting the proposition that a party may not unduly delay the filing of such a motion. The Third District Court of Appeal reversed the order and remanded for an evidentiary hearing on the delay issue, but also addressed the appellee's reliance upon Herron v. Jones, 276 Ark. 493, 637 S.W.2d 569 (1982), for its assertion that the denial of the motion was not erroneous because the case did not involve a lawyer's change of employment. Distinguishing Herron, in which an order of disqualification was reversed because of the precautions taken by both law firms to prevent disclosure of confidential information by the nonlawyer employee, the court noted that "no such precautions were taken" in the case at issue and rejected the assertion that Canon 9 of the Code of Professional Responsibility "is not implicated under these circumstances." 466 So.2d at 1123. The court ruled that once the evidence established that the employee had been "privy to the confidences" of the defendant, "[n]othing more was required to be shown to support the disqualification of [the plaintiff]'s counsel in this case." Id. However, the court's opinion arguably supports the argument that its holding may have been different had the firms involved taken steps to preserve client confidences.
In Esquire Care, the motion to disqualify was based upon the hiring of a legal secretary who had been exposed to confidential information in the case at the former firm, but had not revealed confidential information to the hiring firm, which had specifically instructed her not to discuss her knowledge of the case. The Second District Court of Appeal upheld the order denying the motion, stating that "we are not persuaded that [the trial court's] ultimate conclusion represents a departure from the essential requirements of law." 532 So.2d at 741. Agreeing with the Lackow court "that ethical considerations applicable to attorneys might also extend to support personnel" and that the determination of whether a person is privy to confidential information should turn on access to privileged materials, not status as a lawyer or nonlawyer, it nevertheless rejected what it characterized as Lackow's "overbroad prophylactic rule" in such situations and held that, in addition to the requirement of a showing that the nonlawyer employee was privy to client confidences, there must be an evidentiary hearing "to determine, not just whether a potential ethical violation has occurred, but whether as a result one party has obtained an unfair advantage over the other which can only be alleviated by removal of the attorney." Id.
In City of Apopka, the facts were essentially the same as in Esquire Care. The *201 Fifth District Court of Appeal discussed the two distinct approaches in Lackow and Esquire Care, agreed with the analysis of the Second District, and quashed the order granting the motion for disqualification. Observing that "[t]o engage in the bright line disqualification of a party's chosen law firm based solely on that firm's employment of secretarial staff previously exposed to confidential information by a prior employer is excessively harsh," it held that "disqualification is required only when there is evidence that the law firm obtained confidential information, thereby gaining an unfair advantage, from its new personnel." 701 So.2d at 644. Based upon the undisputed evidence that the hiring firm "had effectively screened the secretary from involvement in the subject litigation" and the trial court's finding that an ethical violation had not occurred, the appellate court held that disqualification was improper because the hiring firm "has taken those steps which a responsible firm should to ensure that there is no impropriety." Id.
In Koulisis, the motion to disqualify was also based upon the hiring by opposing counsel of a legal secretary who had been exposed to confidential information in the case at the former firm. The trial court denied the motion, finding that by isolating her from the case and circulating a memo indicating that she was not to be exposed to the file, the hiring firm had "`taken steps which a responsible firm should have taken to insure that there is no impropriety.'" 730 So.2d at 291. The Fourth District Court of Appeal quashed the order, holding that "[n]othing more was required to support disqualification" once the evidence demonstrated that the secretary, while at the former firm, "was privy to confidential information material to the case" and that she thereafter went to work "for the opposing side in the same lawsuit." Id. at 292. It ruled that "[t]he trial court's conclusion that the post hiring isolation of [the secretary] could cure the breach in confidentiality was a departure from the essential requirements of law." Id.
The court stated that the secretary "must be viewed the same as if she had been an attorney at [the former firm] assigned to handle the Koulisis case" and that because her "desertion was akin to a lawyer switching to an opposing firm in the middle of a lawsuit, a motion to disqualify her new firm is subject to Rule 41.10(b) of the Rules Regulating the Florida Bar." Id. at 291. It found that under Rule 4-1.10(b), "disqualification turns on the factual inquiry of whether [the secretary] had actual knowledge of material, confidential information" and that if she "had actual knowledge of protected information," the hiring firm "could not defeat disqualification by showing that they had taken steps to isolate [her] from the Koulisis case" because the rule "gives no opening for such defensive measures." Id. It stated that once the former firm "established a prima facie case for disqualification," the burden shifted to the hiring firm to "demonstrate by the greater weight of the evidence that [the secretary] had no actual knowledge of any confidential information material to the case," noting that this imposition of the burden of proof "means that close cases under Rule 4-1.10(b) will be decided in favor of disqualification to preserve the integrity of a fair adversary system." Id. at 292. It noted:
The values underlying our decision are that the confidences and secrets of a client should be preserved and that a law firm and its personnel should avoid positions adverse to a client. These values are enhanced by applying Rule 4-1.10(b) without engrafting additional elements before requiring disqualification. Rule 41.10(b) thoughtfully balances the need for confidentiality with the competing principles that persons should have reasonable choice of legal counsel and that lawyers or support personnel should not be unreasonably hampered in forming new associations. See Comment to Rule 4-1.10, Rules Regulating *202 the Florida Bar. Not requiring the City of Apopka or Esquire Care evidentiary showing acknowledges the practical difficulty of proving what goes on behind closed doors. Moreover, to assert the benefits of the attorney-client privilege, a client should not have to reveal secrets in order to prove that the other side has received an unfair advantage from confidential information.
Id. at 293 (cite omitted). The court certified conflict with Esquire Care and City of Apopka, stating that those cases had not applied Rule 4-1.10(b), "which requires only a showing that the attorney or secretary switching firms have actual knowledge of confidential information," but had instead reacted against the analysis in Lackow, "which was based on Canon 9 (`A Lawyer Should Avoid Even the Appearance of Impropriety') of the Code of Professional Responsibility," and had "adopted a different test in response to a rigid rule that would have made disqualification automatic in many situations, even where support personnel had no actual knowledge of confidential information." Id.
When it issued Lackow, the Third District Court of Appeal did not have the benefit of ethics opinions on this subject subsequently published by the Florida Bar and the American Bar Association (ABA), nor did it have access to the principal judicial treatises and commentaries which have been written since that time. However, the same cannot be said for the courts which decided Esquire Care, City of Apopka, and Koulisis. In Esquire Care, the Second District Court of Appeal referred to, but did not rely upon, Florida Bar Ethics Opinion 86-5, which states:
A law firm that hires a nonlawyer who was employed by an opposing law firm has a duty not to seek or permit disclosure by the employee of the confidences or secrets of the opposing firm's clients. The firm from which the employee departs has a corresponding duty to admonish the employee that he or she is obligated to preserve the confidences and secrets of the clients.
CPR: Preamble, DR 3-104(C); DR 4-101(E)
RPC: Rule 4-1.4; Rule 4-5.3
The Committee has been asked to consider how the conflict-of-interest and confidentiality rules apply when nonlawyer employees move from one law firm to another. The issue usually arises when a paralegal, legal assistant or legal secretary "switches sides"that is, moves from one firm to a second firm that is opposing counsel in some matter after having worked on the matter for the first firm or having otherwise been exposed to confidences and secrets of the first firm's client.
DR 4-101(E) requires a lawyer to "exercise reasonable care to prevent his employees... from disclosing or using confidences or secrets of a client." DR 3-104(C) requires a lawyer or law firm to "exercise a high standard of care to assure compliance by the nonlawyer personnel with the applicable provisions of the Code of Professional Responsibility." See Proposed Rule of Professional Conduct 4-5.3 ("Responsibilities Regarding Nonlawyer Assistants"). The Preamble to the Code of Professional Responsibility recognizes:
Obviously the canons, ethical considerations, and disciplinary rules cannot apply to nonlawyers; however, they do define the type of ethical conduct that the public has a right to expect not only of lawyers but also of their nonprofessional employees and associates in all matters pertaining to professional employment. A lawyer should ultimately be responsible for the conduct of his employees and associates in the course of the professional representation of the client.
The Code does not directly regulate the conduct of nonlawyer employees of a law firm. The Code recognizes, however, that nonlawyer employees necessarily share in confidential and secret information *203 and therefore necessarily share the attorney's ethical obligation not to disclose or use such information without the client's consent. For that reason, lawyers are required to use care to ensure that their nonlawyer employees appreciate and conduct themselves in accordance with the shared duty of confidentiality.
Thus, while the new employer of an attorney who switched sides would be disqualified automatically from representation in the matter, the new employer of a nonlawyer employee who switched sides would not be disqualified. However, both the hiring firm and the former firm still must meet their obligations under DR 4101(E) and DR 3-104(C). That is, the former firm has a duty to admonish the departing employee that the employee has an ethical or moral obligation not to reveal confidences or secrets of any client to the hiring firm. The hiring firm has a corresponding duty not to seek or permit a disclosure of confidences or secrets by the employee and not to use such information.
The former firm has a second duty when a paralegal or legal assistant switches sides. If the employee had a close relationship with the client, the former firm must advise the client of the employee's departure and new employment. The client is entitled to be kept informed of significant developments in the representation. Proposed Rule of Professional Conduct 4-1.4 ("Communication").
In 1988, the ABA's Committee on Professional Ethics (the Committee) addressed the question of whether a law firm that hires a paralegal formerly employed by another lawyer must withdraw from representation of a client defending a lawsuit. 67 ABA/BNA Lawyers' Manual on Professional Conduct 901:318 (Aug. 31, 1988), ABA Informal Opinion 88-1526 (June 22, 1988): Imputed Disqualification Arisinq From Chanqe in Employment By Nonlawyer Employees (hereafter, "ABA Informal Opinion"). In the question presented to the Committee, the paralegal had gained substantial information relating to representation of the former employer's client, the plaintiff in the lawsuit, but the hiring firm asserted that it would screen the paralegal from receiving information about or working on the lawsuit and would direct the paralegal not to disclose any information relating to the lawsuit gained during the former employment. The Committee observed that when the situation involves a lawyer moving to an opposing firm, "the Model Rules permit continued representation by the new law firm only where the newly employed lawyer acquired no protected information and did not work directly on the matter while with the former employer" and "do not recognize screening the lawyer from sharing the information in the employing firm as a mechanism to avoid disqualification of the entire firm." Id. at 901:320. It stated that when the situation involves movement of a nonlawyer between firms, however, "additional considerations are present which persuade the Committee that the functional analysis of Kapco is more appropriate than would be a rule requiring automatic disqualification once the nonlawyer is shown to have acquired information in the former employment relating to the representation of the opponent." Id. In Kapco Manufacturing Co., Inc. v. C & O Enterprises, Inc., 637 F.Supp. 1231 (N.D.Ill.1985),[1] the federal district court denied a motion for disqualification of a law firm which had hired an office manager-secretary from the opposing firm, finding that the plaintiff had presented a prima facie case by proving that the employee was privy to confidential information about the plaintiff, but that the defendant had then met its burden of going forward with evidence to rebut the *204 presumption that this information had been shared with the hiring firm, by showing that the hiring firm had taken appropriate steps to ensure that the employee did not work on the case and did not discuss the case with anyone.
Noting that it is important "that nonlawyer employees have as much mobility in employment opportunity as possible consistent with the protection of clients' interests," the Committee opined that "any restrictions on the nonlawyer's employment should be held to a minimum necessary to protect confidentiality of client information." 67 ABA/BNA Lawyers' Manual on Professional Conduct at 901:320. Observing that Model Rule 5.3 imposes upon lawyers general supervisory obligations with respect to their nonlawyer employees and requires them to make reasonable efforts to ensure that their employees maintain conduct compatible with the professional obligations of lawyers, including "nondisclosure of information relating to the representation of clients," it found that lawyers are required to maintain "procedures designed to protect client information from disclosure by the lawyer's employees and agents," and that in the circumstances presented,
these measures should involve admonitions to be alert to all legal matters, including lawsuits, in which any client of the former employer has an interest. The nonlawyer employee should be cautioned: (1) not to disclose any information relating to the representation of a client of the former employer; and (2) that the employee should not work on any matter on which the employee worked for the prior employer or respecting which the employee has information relating to the representation of the client of the former employer. When the new firm becomes aware of such matters, the employing firm must also take reasonable steps to ensure that the employee takes no action and does no work in relation to matters on which the nonlawyer worked in the prior employment, absent client consent after consultation.
Id. at 901:321 (footnote omitted). The Committee opined that the hiring firm would be required to withdraw or be disqualified, absent informed consent by the client of the former firm, in those circumstances where (1) confidential information obtained at the former firm has been revealed to lawyers or other personnel in the hiring firm or (2) screening would be ineffective, or the nonlawyer would be required to work on the other side of the same or a substantially related matter. It also suggested that the former employer, upon learning that the employee has joined the opposing law firm, "should consider advising the employing firm that the paralegal must be isolated from participating in the matter and from revealing any information relating to representation of the [former employer's] client," and that if the measures taken by the hiring firm are not satisfactory, the former employer should consider filing a motion for disqualification. Id. It noted that the standards expressed in its opinion "apply to all matters where the interests of the clients are in conflict and not solely to matters in litigation," and that they "apply equally to all nonlawyer personnel in a law firm who have access to material information relating to the representation of clients and extends (sic) also to agents who technically may be independent contractors, such as investigators." Id. at 901:322.
While not binding upon the courts, these ethics opinions set out standards that we find balance the public's interest in the integrity of the judicial process, the parties' interest in the integrity of the particular proceeding, the client's right to chosen counsel and the financial burden on the client of replacing disqualified counsel, the nonlawyer employee's interest in open employment opportunities, the lawyers' interests in providing efficient and effective legal representation, and the court's concern that tactical abuse may underlie the motion for disqualification. The majority *205 of courts and ethics committees of other jurisdictions have adopted similar standards.[2] In addition to Kapco, we have found three judicial opinions to be particularly instructive.
The most comprehensive judicial treatment of the disqualification question with respect to the hiring of nonlawyer personnel by opposing counsel is In re Complex Asbestos Litigation, 232 Cal. App.3d 572, 283 Cal.Rptr. 732 (1 Dist. 1991), in which the court discussed the appellate standard of review, the concerns raised by disqualification motions, and the principles guiding its adoption of a disqualification standard based upon a rebuttable presumption of shared confidences. We agree with that court that a trial court's decision on a motion for disqualification is reviewed for abuse of discretion, that the trial court's discretion is limited by the applicable legal principles, and that the appellate court will not substitute its judgment for the trial court's express or implied findings of fact which are supported by competent substantial evidence. See id. at 739. We also agree that the trial court's authority to disqualify a lawyer or a law firm derives from its inherent power to control the conduct of all persons connected with judicial proceedings before it, that the preservation of public trust in the scrupulous administration of justice and the protection of the confidentiality of communications between attorney and client are fundamental to our legal system, that it is necessary for the courts to construct an appropriate prophylactic rule to protect the confidentiality of the attorney-client relationship and the integrity of the judicial system in situations like the one presented, and that the "automatic disqualification" rule applied to a law firm that hires a lawyer from an opposing firm, which is based upon an irrebuttable presumption of shared confidences, is not appropriate for a similar situation involving the hiring of a nonlawyer, because of the "obvious differences between lawyers and their nonlawyer employees in training, responsibilities, and acquisition and use of confidential information." Id. at 745. Under the standard adopted by the California court, evidence that the nonlawyer employee possesses confidential information that is material to the representation of the former firm's client in the case at issue raises a presumption that the employee has disclosed that information to the hiring firm, but that presumption may be rebutted by a showing that the hiring firm has implemented, before the employee was hired, a procedure which effectively "screens" the employee from any involvement with the litigation. "The showing must satisfy the trial court that the employee has not had and will not have any involvement with the litigation, or any communication with attorneys or coemployees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed." Id. at 747.
In Smart Industries Corp., Mfg. v. Superior Court, County of Yuma, 179 Ariz. 141, 876 P.2d 1176, 1180-81 (Ct.App. 1994), the court observed that the quandary for the lower tribunal was that "the disqualification motion was based on the conduct of a nonlawyer, over whom the [ABA] Model Rules [of Professional Conduct] have no effect in a disciplinary setting." It found that "the operation of ER 1.10(b) may be extended to the conduct of nonlawyers through ER 5.3, ... [which] imposes on a lawyer the duty to supervise a nonlawyer employee, [including] `reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer,'" and that this duty of supervision "also includes lawyer responsibility for any nonlawyer conduct `that would be a violation of the rules of professional conduct if engaged in by a lawyer,' if the *206 lawyer orders, has knowledge of, or ratifies such conduct." It held that "a trial court has authority, in a litigation setting, to disqualify counsel on the basis of a nonlawyer assistant's conduct that would violate an ethical rule protecting a client's confidential communications to a lawyer." Id. at 1181.
Addressing the question of the standard to be applied in disqualification determinations, the Arizona court noted that some jurisdictions, in deciding motions to disqualify involving movement of a lawyer or nonlawyer to an opposing firm, utilize a three-step analysis: if there is a "substantial relationship" between the prior and current representations, a presumption of "shared confidences" arises upon employment by the hiring firm, which can be rebutted by establishing that the lawyer or nonlawyer was not privy to the confidences of the former firm's client, or by establishing that "specific institutional mechanisms" have been implemented to "effectively insulate" the lawyer or nonlawyer against any flow of confidential information to the hiring firm. See id. at 1182. The court cited Schiessle v. Stephens, 717 F.2d 417 (7th Cir.1983), in which the analysis was applied to a lawyer who had changed firms, and Kapco, in which the analysis was applied to a secretary who had changed law firms. Observing that "Arizona law does not recognize screening devices to avoid imputed disqualification of the new law firm to which a lawyer moves when that lawyer possesses client confidences and the new firm has interests adverse to that client" and that ER 1.10 "admits waiver or consent as the only exception to imputed disqualification of the receiving firm," the court noted that "[t]his mandatory bright line was drawn in deliberate contra-distinction to ER 1.11, which permits a screening solution when lawyers move from government practice to private firms." Id. The court stated:
We believe that [the] reason for treating government lawyers differently in the context of imputed disqualification applies equally to nonlawyer assistants who, unlike lawyers in private practice, generally have neither a financial interest in the outcome of a particular litigation, nor the choice of which clients they serve. Moreover, in our opinion, the public perception of what is expected of lawyers as compared to nonlawyers is different, probably based on the "independent contractor" status enjoyed by lawyers as compared to the "master/servant" role of nonlawyer assistants. Our analysis, thus, is directed to determining the scope and extent of a supervising lawyer's ethical duty under ER 5.3, to insure that a nonlawyer's conduct in this "master/servant" setting is compatible with other ethical obligations.
Id. at 1184. The court ruled that the screening requirements articulated in the ABA Informal Opinion "are sufficient to satisfy a lawyer's duty under ER 5.3 to supervise a nonlawyer employee in a manner that will assure conduct `compatible with the lawyer's ethical obligations'" and that "satisfaction of these requirements will prevent disqualification of the firm based on a nonlawyer's potential conflict even though a stricter standard is imposed on lawyers by operation of ER 1.10(b)." Id. at 1185.
In Phoenix Founders, Inc. v. Marshall, 887 S.W.2d 831 (Tex.1994), the court addressed the contention that the ethical standard applied to a lawyer who moves to an opposing law firm should also apply to a paralegal who moves to an opposing law firm. Noting the conclusive presumptions which are applied to lawyers, "that confidences and secrets were imparted to the attorney during the prior representation" and "that an attorney who has obtained confidential information shares it with other members of the attorney's firm, because of the interplay among lawyers who practice together," the court agreed that a paralegal who has actually worked on a case must be subject to the former presumption, and that "virtually any information *207 relating to a case should be considered confidential," but disagreed "with the argument that paralegals should be conclusively presumed to share confidential information with members of their firms." Id. at 833-34. Observing that Texas Disciplinary Rule of Professional Conduct 5.03 requires "a lawyer having direct supervisory authority over a nonlawyer to make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer," and subjects the supervising lawyer to discipline if he or she "orders, encourages, or even permits a nonlawyer to engage in conduct that would be subject to discipline if engaged in by a lawyer," the court found that, "to the extent that the Disciplinary Rules prohibit a lawyer from revealing confidential information, R. 1.05(b)(1), they also prohibit a supervising lawyer from ordering, encouraging, or permitting a nonlawyer to reveal such information." Id. at 834. The court agreed with the ABA Informal Opinion that "client confidences may be adequately safeguarded if a firm hiring a paralegal from another firm takes appropriate steps in compliance with the Disciplinary Rules," and with the court's ruling in Complex Asbestos Litigation that disqualification would not ordinarily be required as long as "the practical effect of formal screening has been achieved," but noted that disqualification would be required, absent consent of the former employer's client, under the circumstances outlined in the ABA Informal Opinion regarding actual disclosure of confidential information or ineffectiveness of screening procedures. See id. at 834-35.
Having carefully examined the foregoing opinions and others discussing various approaches to the question presented in this case, as well as several commentaries addressing the issue,[3] we adopt the following standard to guide the discretion of lower tribunals in determining whether a law firm which hires a nonlawyer employee[4] of an opposing firm must be disqualified from the litigation. The burden of proving that disqualification is required rests at all times upon the movant (the client of the former firm), which also has the initial burden of presenting credible evidence that the nonlawyer employee was exposed to confidential information[5] that is material to the representation of the former firm's client in the matter at issue before the lower tribunal. When presented, this evidence raises two rebuttable presumptions: that the nonlawyer employee actually obtained confidential information material to the case, and that the nonlawyer employee disclosed or will disclose such confidential information to the hiring firm. The burden of going forward then shifts to the client of the hiring firm, who must attempt to rebut at least one of these presumptions by proving to the trier of fact either that the nonlawyer employee did not acquire any confidential information material to the matter at *208 issue while employed by the former firm, or that the nonlawyer employee has not disclosed any material confidential information and that the hiring firm has taken adequate measures to ensure that no such disclosure will occur. If the client of the hiring firm convinces the trier of fact by the greater weight of the evidence that the nonlawyer employee did not acquire any material confidential information while employed by the former firm, the motion for disqualification of the hiring firm will be denied. However, if the trier of fact is not so convinced, it must then determine whether the evidence rebuts the second presumption, that the nonlawyer employee disclosed material confidential information to the hiring firm. At this point, the burden of going forward shifts to the client of the former firm, who must present evidence that the nonlawyer employee has actually disclosed material confidential information to the hiring firm, or that the nonlawyer employee has worked on the case or will necessarily be required to work on the case, or that the measures taken by the hiring firm to ensure that the nonlawyer employee does not disclose material confidential information are, or will be, ineffective. If the trier of fact is persuaded that confidential information has not been disclosed to the hiring firm and that the hiring firm has implemented adequate measures to reasonably ensure that no such disclosure will occur, the motion will be denied. If the trier of fact is persuaded that confidential information has actually been disclosed to the hiring firm, or that the nonlawyer employee has worked or will necessarily work on the case, or that adequate screening measures have not been implemented, or that screening measures would be ineffective, the motion will be granted.
This standard is based upon Rule 4-5.3 of the Florida Rules of Professional Conduct, which imposes upon lawyers both the ethical duty to make reasonable efforts to ensure that the conduct of any nonlawyer assistant "employed or retained by or associated with a lawyer" is compatible with the professional obligations of the lawyer, and the responsibility "for conduct of such person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer," if the lawyer "orders, or with knowledge of the specific conduct, ratifies the conduct involved," or if the lawyer "is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." As noted in the Comment to Rule 4-5.3:
Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals. Such assistants, whether employed or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer should give such assistants appropriate instruction and supervision concerning ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should be responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.
Rule 4-5.3 requires a lawyer to make reasonable efforts to ensure that the conduct of any nonlawyer employee would not violate the Rules of Professional Conduct "if engaged in by a lawyer," including the obligation under Rule 4-1.6 not to "reveal information relating to representation of the client" except under circumstances specified in the rule, and the obligation under Rule 4-1.9 not to "use information relating to the representation to the disadvantage of the former client" except under specified circumstances. We agree with the Comment to Rule 4-1.10 that the problem of imputed disqualification, even in the context of a lawyer moving from one firm *209 to another, cannot properly be resolved by either a per se rule of disqualification based upon a conclusive presumption of shared confidences or the undefined concept of "appearance of impropriety" which was proscribed in former Canon 9 of the Code of Professional Responsibility. The standard we have adopted for imputed disqualification based upon the hiring of a nonlawyer from an opposing law firm, like the somewhat stricter standard set out in Rule 4-1.10(b) for lawyers, is based upon a functional analysis of the twin goals of preserving confidentiality and avoiding positions adverse to a former client.
We decline to set out in this opinion the specific procedures to be implemented in such situations to ensure that nonlawyer employees preserve the confidentiality of information relating to the representation of the clients of their current and former employers. There are various methods of screening the nonlawyer employee within the hiring law firm from participation in or knowledge of the case involving the client of the former law firm, and it is obvious that the specific methods to be used and their effectiveness will vary with the size and structure of the hiring firm, its internal operating procedures, and the nature and scope of the litigation involved.[6] At a minimum, however, such measures should include admonishing the nonlawyer employee not to discuss the case with anyone in the hiring firm, restricting the nonlawyer employee from access to the computer and paper files related to the case, and prohibiting all attorneys and nonlawyer employees of the hiring firm from discussing the case with, or in the presence of, the nonlawyer employee.[7]
Although not necessary to our holding in this case, we note that the former firm in a situation like the one presented has an independent duty under Rule 4-5.3 to instruct the departing nonlawyer employee as to his or her ethical obligation not to reveal to the hiring firm any confidential information regarding any of the former firm's clients. The former firm should also consider advising the hiring firm that the nonlawyer employee must be isolated from participation in any matter in which clients of the former firm are involved as adverse parties. If the nonlawyer employee had a close relationship with the former firm's client, the former firm has a duty under Rule 4-1.4 ("Communication") to advise the client of the employee's departure and new employment. We also note that the issue of disqualification will not arise in the first place if the hiring firm has obtained the written consent of the former firm's client to the hiring and work assignment of the nonlawyer employee.[8]
We must now apply the standard we have adopted to the facts of the case at issue. The JCC found that the E/C met their initial burden of establishing that the nonlawyer employee had been exposed to confidential information as a result of her employment with the former firm. From this evidence arose two rebuttable presumptions: *210 that she obtained confidential information and that she disclosed the confidential information to the hiring firm. No evidence was presented to rebut the first presumption, but the client of the hiring firm presented evidence, which the JCC accepted, to rebut the second presumption. No evidence was presented that the nonlawyer employee actually disclosed material confidential information to the hiring firm, or that she will necessarily work on the case, or that screening would be ineffective in this case. We find that, in light of the JCC's factual findings, which are supported by competent substantial evidence, his conclusion that the hiring firm must be disqualified was a departure from the essential requirements of law and will result in material harm which cannot be remedied by ordinary appeal.[9]
The petition is GRANTED, the order is QUASHED, and the case is REMANDED for entry of an order denying the motion for disqualification. We certify conflict with the aforementioned opinions of the other Florida courts addressing this issue, to the extent that the disqualification standard we apply here differs from the standards utilized in those decisions.
WEBSTER, J., CONCURS. BENTON, J. CONCURS IN RESULT WITH OPINION.
BENTON, J., concurring in result.
I concur in the judgment. The client of the hiring firm met his burden to prove by "the greater weight of the evidence that the nonlawyer employee ... [had not] disclosed material confidential information to the hiring firm [and would not do so in the future because appropriate steps had been taken]." Ante at 208. Preliminarily, Bee-Dee Neon & Signs, Inc. (Bee-Dee Neon), had proven to the satisfaction of the judge of compensation claims that the paralegal had access to confidential information, material to its defense of Charles L. Stewart's claim, before she left the firm representing Bee-Dee Neon and began work with the firm representing Mr. Stewart. But the judge of compensation claims found:
[A]t all times pertinent hereto, [the hiring firm who represents the claimant] had established appropriate screening mechanisms to prevent [the paralegal] from [having] any involvement with representation of the Claimant in this case and from revealing any of the information which she might have obtained as an employee of [the former firm who represents Bee-Dee Neon]. [The JCC further found] that no ethical violation ha[d] occurred, and that [the hiring firm] "ha[d] taken those steps which a responsible firm should to ensure that there is no impropriety." City of Apopka v. All Corners, Inc., 701 So.2d 641, 644 (Fla. 5th DCA 1997).
These findings are fully supported by the record and rebut one of the presumptions of shared confidences that arose when Bee-Dee Neon established that, while employed at her former firm, the paralegal was exposed to privileged materials pertinent to Mr. Stewart's claim. Mr. Stewart and his firm met their burden of proof to show that the paralegal had not shared and would not share confidences with her new employer.
It bears emphasizing, however, that when a law firm's non-lawyer employee has access to confidential information, rebuttable presumptions arise not only that the employee garnered the confidential information but also that the employee has disclosed or will disclose the information to a law firm that hires the employee away. These rebuttable presumptions result in *211 corresponding burdens of proof on the hiring firm, and do not, when they arise, merely shift the burden of going forward. The burden of proof shifts. The majority opinion misses the mark in asserting that, when a moving party proves that its lawyer employed somebody with access to confidential information who then left to work for a lawyer on the other side, the burden of proof does not shift to the hiring firm's client. See ante at 207 ("The burden of proving that disqualification is required rests at all times upon the movant....").
The analysis underlying the decision in In re Complex Asbestos Litigation, 232 Cal.App.3d 572, 283 Cal.Rptr. 732 (1991), is instructive. There a paralegal who had worked for a firm representing asbestos defendants obtained employment with a new firm that had filed a number of asbestos suits against his former firm's clients. Upon learning of his new employment, clients of the former firm moved to disqualify the hiring firm. See id. at 735-37. The trial court granted the motion to disqualify the hiring firm and California's First District Court of Appeal affirmed, reasoning:
Absent written consent, the proper rule and its application for disqualification based on nonlawyer employee conflicts of interest should be as follows. The party seeking disqualification must show that its present or past attorney's former employee possesses confidential attorney-client information materially related to the proceedings before the court. The party should not be required to disclose the actual information contended to be confidential. However, the court should be provided with the nature of the information and its material relationship to the proceeding.
Once this showing has been made, a rebuttable presumption arises that the information has been used or disclosed in the current employment. The presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff. To rebut the presumption, the challenged attorney has the burden of showing that the practical effect of formal screening has been achieved. The showing must satisfy the trial court that the employee has not had and will not have any involvement with the litigation, or any communication with attorneys or coemployees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed. If the challenged attorney fails to make this showing, then the court may disqualify the attorney and law firm.
Id., 283 Cal.Rptr. at 746-47 (footnote and citations omitted). In the present case, it should be noted, the entire panel agrees that proof of a non-lawyer employee's access to confidential information in the former employment gives rise to a presumption that the employee in fact obtained the information, but that this presumption can in theory be rebutted.
The court in In re American Home Products Corp., 985 S.W.2d 68 (Tex.1998), where plaintiffs had sued several companies (collectively "Wyeth") in connection with Norplant contraceptive devices proceeded in a similar fashion. After a nonlawyer working for a firm retained by Wyeth went to work for a firm that represented many of the plaintiffs in the Norplant litigation, Wyeth moved to disqualify the hiring firm. See Id., 985 S.W.2d at 71-72. The trial court denied the motion but the Texas Supreme Court reversed, explaining that, once Wyeth established that the employee in question had worked on the Norplant litigation, two presumptions arose: first, that she obtained confidential information and, second, that she shared that information with the hiring firm. See also Phoenix Founders, Inc. v. Marshall, 887 S.W.2d 831, 834-35 (Tex.1994). Concluding that the first presumption could not be rebutted, the court placed the burden *212 of rebutting the second presumption on the hiring firm's client.
Once a party seeking disqualification establishes that there was contact or communication between the tainted nonlawyer and co-counsel, the burden shifts to the party resisting disqualification of co-counsel to offer evidence that there was no reasonable prospect that the opposing party's confidential information was disclosed and that it was not in fact disclosed. This burden is properly placed on the party seeking to continue its counsel's representation rather than the party whose confidential information is at issue, for the same reasons that the burden is placed on the new employer of the nonlawyer to show that adequate screening occurred.
In re American Home Products Corp., 985 S.W.2d at 77-78; see Phoenix Founders, Inc., 887 S.W.2d 831 at 834; see also Smart Indus. Corp. v. Superior Court of the State of Arizona, In and For County of Yuma, 179 Ariz. 141, 876 P.2d 1176, 1185 (Ct.App.1994); Herron v. Jones, 276 Ark. 493, 637 S.W.2d 569, 571 (1982); Glover Bottled Gas Corp. v. Circle M. Beverage Barn, Inc., 129 A.D.2d 678, 514 N.Y.S.2d 440, 441 (1987).
Here the majority opinion apparently adapts its test from language in Kapco Manufacturing Co. v. C & O Enters., Inc., 637 F.Supp. 1231 (N.D.Ill.1985). Kapco Manufacturing Company, Inc. (Kapco) sought disqualification of a firm that hired a secretary who had been privy to confidential information while employed by Kapco's counsel. See id. at 1233-34. The Kapco court did state that, as the party moving to disqualify the hiring firm, Kapco always had the burden of proof and that, once Kapco made out a prima facie case, only the burden of going forward shifted to the hiring firm's client. See id. at 1238; see also Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1579 (Fed.Cir. 1984). But the court held that
[t]he evidence presented to rebut the presumption of shared confidences must "clearly and effectively" demonstrate that the attorney whose disqualification is at issue did not in fact possess any confidential information: he must prove that he did not have knowledge of the confidences of the client.
Kapco Manufacturing Co., 637 F.Supp. at 1238 (emphasis supplied). Even under Kapco, therefore, the hiring firm's client ended up with the burden of proving that the hiring firm did not obtain client confidences from the non-lawyer employee. Its claims to the contrary notwithstanding, the Kapco court shifted the burden of persuasion to the hiring firm's client, not merely the burden of going forward, by requiring it to prove clearly and effectively that disqualification was not required because information was not shared.
The Kapco court relied on Panduit Corp. v. All States Plastic Manufacturing Company, 744 F.2d 1564, 1579 (Fed.Cir. 1984) ("The burden on the opposing party, however, is limited to production of evidence."), disapproved on other grounds, Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), for the proposition that the burden always rests on the party seeking disqualification. But the Panduit court, too, indicated that the hiring firm's client had a substantial burden:
The effect of a presumption of fact, here the fact of shared confidences, is to place upon the opposing party the burden of establishing the nonexistence of that fact.
Id. at 1579 (footnote omitted); see also Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir.1983) ("The evidence presented to rebut this presumption must `clearly and effectively' demonstrate that the attorney in question had no knowledge of the information, confidences and/or secrets related by the client in the prior representation."). See also MMR/Wallace Power & Industrial, Inc. v. Thames Associates, 764 F.Supp. 712 (D.Conn.1991).
*213 A party seeking to disqualify opposing counsel on grounds that opposing counsel has hired a non-lawyer who used to work for the party's own counsel has the burden to prove that the non-lawyer employee had access to confidential information material to the litigation while employed by the party's counsel. If this burden of proof is met, the burden of proof should shift to the hiring firm's client to prove that the employee did not acquire material confidential information while working for the moving party's counsel or to prove in some other fashion that the employee has not and will not in the future share the confidential information with the hiring firm, because appropriate prophylactic steps have been taken. See Rule 5-5.3, Rules Regulating the Florida Bar.
NOTES
[1] This federal district court case has been cited numerous times in court opinions from other jurisdictions and in commentaries addressing the question of disqualification based upon the hiring of nonlawyer employees from an opposing law firm.
[2] See William Freivogel, Selected Issues in Litigation Practice, 72 Tul. L.Rev. 637, 657-58 (December 1997).
[3] See Jonathan A. Beyer, Practicing Law at the Margins: Surveying Ethics Rules for Legal Assistants and Lawyers Who Mediate, 11 Geo. J. Legal Ethics 411 (Winter 1998); John M. Burman, Support Staff Conflicts of Interest, 20 Wyo. Law. 12 (October 1997); Arthur Garwin, Confidentially Speaking, 84-OCT A.B.A.J. 78 (1998); Stephen E. Kalish, The Side-Switching Staff Person in a Law Firm; Uncomplimentary Assumptions and an Ethics Curtain, 15 Hamline L.Rev. 35 (Fall 1991); Edward J. Peterson III, Commentary, Ethical Considerations for Law Clerks and Paralegals, 23 J. Legal Prof. 235 (1998-1999); Kelly A. Randall, Note, Do Your Client's Confidences Go Out the Window When Your Employees Go Out the Door?, 42 Hastings L.J. 1667 (August 1991). See also The Ethical Wall: Its Application to Paralegals, 501 PLI/Lit 19 (April-Jun 1994).
[4] We use the general term "nonlawyer employee" to refer to any "nonlawyer assistant" contemplated by Rule 5.3 of the Florida Rules of Professional Conduct, including any paralegal, legal assistant, secretary, clerk, law student intern, investigator, or other person who is "employed or retained by or associated with a lawyer" in the representation of a client.
[5] We use the term "confidential information" to refer to any information relating to representation of a client.
[6] See Burman, supra note 3, at 14-15; Kalish, supra note 3, at 61-62; Randall, supra note 3, at 1695-96, 1700-01; The Ethical Wall: Its Application to Paralegals, supra note 3, at 31-32, 45-48. See also Dunnigan, The Art Formerly Known as the Chinese Wall: Screening in Law Firms: Why, When, Where, and How, 11 Geo. J. Legal Ethics 291 (Winter, 1998); Pizzimenti, Screen Verite: Do Rules About Ethical Screens Reflect the Truth About Real-Life Law Firm Practice?, 52 U. Miami L.Rev. 305 (October, 1997).
[7] See The Ethical Wall: Its Application to Paralegals, supra note 3, at 31.
[8] The hiring firm, not the nonlawyer employee, should obtain the consent because it is the hiring firm's ethical obligation to ensure nondisclosure of confidential information, but because the hiring firm is ethically prohibited from conferring directly with a represented adverse party without consent of its counsel, it must request the consent through the former firm, which has a duty to ensure that its employees not reveal confidential information of its client and can explore with the client the risks involved in giving such consent. See Kalish, supra note 3, at 53-54.
[9] See Lee v. Gadasa Corp., 714 So.2d 610 (Fla. 1st DCA 1998), in which this court found that the disqualified lawyer had been involved in the 10-year mortgage foreclosure proceeding from its inception and that "requiring the personal representative to retain new counsel at this point would work a serious injustice on the estate." See also City of Apopka and Koulisis, cited in the text, in each of which the petition for writ of certiorari was granted and the trial court's order on a motion for disqualification was quashed.