# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2025-2114
LT Case No. 2023-11833-FMDL

_____

SANDRA KATHERINE SMITH-
FULLERTON,

     Appellant,

     v.

DAVID MILES FULLERTON,

     Appellee.

_____

Nonfinal appeal from the Circuit Court for Volusia County.
Robert W. Pickens, III, Judge.

John N. Bogdanoff, of The Carlyle Appellate Law Firm,
Orlando, for Appellant.

Carol A. Yoon, of Doran, Foxman, Sims, Wolfe & Yoon, Daytona
Beach, for Appellee.

May 29, 2026

JAY, C.J.

     Sandra Katherine Smith-Fullerton, ("Wife"), appeals from a
nonfinal order denying her motion to disqualify the law firm of

Doran, Foxman, Sims, Wolfe and Yoon, ("Doran Firm"). The Doran Firm represents David Miles Fullerton, ("Husband"). We reverse.[1]

## I.

On July 23, 2023, Wife filed a petition seeking to dissolve her marriage. Husband responded with an answer and a counter-petition. The case was initially assigned to Judge Matthew Foxman, ("Foxman"). Foxman presided over the case for sixteen months.

After retiring from the bench in November of 2024, Foxman became a partner with the Doran Firm. His affiliation started in early February of 2025. When Wife learned that Foxman had become a partner at the Doran Firm, Wife moved to disqualify the firm from further representation of Husband. A successor judge, Judge Robert Pickens, was assigned to the case.

At the first hearing on the motion to disqualify, Theodore Doran, founding partner of the Doran Firm, told the court that Foxman was hired as a partner at his firm. He said that Foxman was employed to represent clients in the areas of criminal and family law. He later refined that by saying "anything [Foxman] can do, he wants to do, he's welcome."

As to the Smith-Fullerton file, Doran said that the file was in the care of a firm paralegal, Barbara Shoner. He did not know the file's location other than it was in the firm's building. He admitted that if Foxman wanted to access the file, he could access it, but believed potential access was not an issue because Foxman "is a man of great integrity." Important to Doran's participation at the hearing, Doran was *never* sworn as a witness. Meaning, Doran never took an oath or affirmation as required by Section 90.605(1), Florida Statutes.

As the hearing was finishing, Foxman entered the courtroom

---

[1] We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(E).

and requested permission to put something on the record. The following is from the hearing transcript:

> **FOXMAN:** I just prefer it on so there's a record for anybody. Here's the thing. Throw me out of this, but keep Mr. Doran. We've already done that. No one has done anything wrong.
>
> **THE COURT:** What do you mean?
>
> **FOXMAN:** That's your ruling, I'm just telling you, and I'm going to get cross-examined on it, I get it. But nothing bad happened, but he's entitled to an attorney of his choosing. She's entitled to object about it, but they're entitled to me to have nothing to do with it, which is what's occurred; nothing. . . . I stand ready for the Court. I'm not under subpoena. My point is either side can ask something. I'm just telling you, this is as clear as it can get for you, and I'll answer any question either side wants, including the Court's.

The initial hearing was continued until June of 2025. At the second hearing, the following testimony was provided by Foxman:

> **COUNSEL:** Have you been screened from participating in this matter since your employment with the Doran Law Firm?
>
> **FOXMAN:** I don't know if it's screening. I just haven't participated, and you and Mr. Doran haven't informed me of anything—nothing.

On cross-examination, Foxman was asked whether he had given notice to opposing counsel in compliance with Florida Bar Rule 4–1.12(c)(2).

> **COUNSEL:** At any point in time did you move forward and notify our office that you were going to be working for the Doran Law Firm?
>
> **FOXMAN:** Notify your specific office?

**COUNSEL:** Yes, sir.

**FOXMAN:** I'm not aware of that occurring.

**COUNSEL:** And do you know whether Mr. Doran notified the office that you would be working in that law firm?

**FOXMAN:** No idea.

In an order dated June 30, 2025, the judge denied Wife's motion to disqualify. The court determined that "the testimony of both Mr. Doran and Mr. Foxman [was] sufficient . . . to conclude the firm . . . screened Mr. Foxman from participation in the case and that [Foxman] [would] not be directly apportioned any of the fee." Additionally, the court found that "Foxman received no confidential information regarding the [Wife] when presiding over this case." In doing so, the court "dr[ew] a distinction between a mediator, who is often privy to case strategy and other confidential information, and a judge who is forbidden from discussing a case without both parties present."

Even though the court recognized that the firm never gave notice that Foxman was joining the firm, the timing of Wife's motion demonstrated to the court that Wife had knowledge of Foxman's new affiliation. As the court said it, "[a]t the latest, [Wife] filed her Motion to Disqualify the next business day after Mr. Foxman joined the firm, thereby requiring this Court to ascertain compliance with" the notice provision of the Bar Rule. Moreover, the court disregarded Wife's concern that Doran was unsworn at the hearing. The court thought it significant that Doran was an active member of The Florida Bar. As a Florida Bar member, Doran was bound by Bar Rule 4–3.3(a)(1), which prohibits a lawyer from knowingly making a false statement to a tribunal. The court suggested that this rule obviated the need for a statutory oath or affirmation. As an alternative basis for its ruling, even disregarding Doran's averments, the court found "there [was still] sufficient evidence to ensure compliance with Rule 4–1.12." This appeal followed.

4

## II.

"[A] trial court's decision on a motion for disqualification is reviewed for abuse of discretion. . . ." *Stewart v. Bee-Dee Neon & Signs, Inc.*, 751 So. 2d 196, 205 (Fla. 1st DCA 2000). But a "trial court's discretion is limited by rules, statutes, and case law, and a trial court abuses its discretion when its ruling is based on an erroneous view of the law." *Wilson v. State*, 327 So. 3d 961, 962 (Fla. 1st DCA 2021) (citations omitted). A trial court also "abuses its discretion if its ruling is based on . . . 'a clearly erroneous assessment of the evidence.'" *McDuffie v. State*, 970 So. 2d 312, 326 (Fla. 2007) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

## A.

Our analysis of the trial court's compliance with the rule begins with the rule's language. The two relevant sections of Rule 4–1.12(a) and (c), provide:

> **RULE 4–1.12 FORMER JUDGE OR ARBITRATOR, MEDIATOR OR OTHER THIRD-PARTY NEUTRAL**
>
> **(a) Representation of Private Client by Former Judge, Law Clerk, or Other Third-Party Neutral.** Except as stated in subdivision (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator, or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing.
>
> **(c) Imputed Disqualification of Law Firm.** If a lawyer is disqualified by subdivision (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter *unless*:
> *(1) the disqualified lawyer is timely screened from any participation in the matter and is directly*

*apportioned no part of the fee therefrom; and*
  *(2) written notice is promptly given to the parties and any appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.*

R. Regulating Fla. Bar 4–1.12(a), (c) (emphasis added).

The initial part of the rule has two requirements. First, the disqualified lawyer must be timely screened from any participation in the case. Second, the disqualified lawyer is prohibited from directly receiving any portion of the fee. R. Regulating Fla. Bar 4–1.12(c)(1). The evidence supplied regarding the proper screening of Foxman was taken at the two hearings on Wife's motion.

Although he did not take an oath or affirmation, Doran offered statements about case screening prior to Foxman's hiring. While Doran acknowledged he did not have a staff meeting about the screening—and also admitted there was nothing done in writing—he did have individual meetings about the case and stated that "[e]verybody" understood the case had to be "walled off." While he admitted Foxman could access the case file, Doran was not concerned about Foxman's potential access because Doran was confident Foxman would not look at the file.

In contrast to Doran's unsworn statements, Foxman, under oath, indicated he was not aware of any firm-wide screening. Specifically, he testified, "I don't know if it's screening. I just haven't participated, and you [Ms. Yoon] and Mr. Doran haven't informed me of anything—nothing." Foxman was the only Doran witness that was sworn at the hearings.

### B.

Section 90.605(1), Florida Statutes establishes that "[b]efore testifying, each witness shall declare that he or she will testify truthfully, by taking an oath or affirmation in substantially the following form: 'Do you swear or affirm that the evidence you are about to give will be the truth, the whole truth, and nothing but the truth?'" § 90.605(1), Fla. Stat. (2024). This means that "[i]f a witness does not either swear or affirm to tell the truth, the

6

witness will not be allowed to testify." Charles W. Ehrhardt & Terry P. Lewis, *Florida Evidence* § 605.1 (2026 ed.).[2]

As our supreme court recognized almost a hundred years ago, "[a] person may be capable of testifying and still [not be] 'competent' to testify." *Crocket v. Cassels*, 116 So. 865, 866 (Fla. 1928). "'Competency,' as applied to a witness, involves both capability and qualification, and imports the existence of all essentials to render the witness lawfully fit to testify." *Id.* "In order to be competent, a witness . . . must qualify himself by taking an oath which he considers binding on his conscience." *Id.* Thus, "[a]n unsworn witness is not competent to testify." *Houck v. State*, 421 So. 2d 1113, 1115 (Fla. 1st DCA 1982); *see also Willis v. Romano*, 972 So. 2d 294, 295 (Fla. 5th DCA 2008) ("[T]he trial judge correctly followed the law by refusing to allow Willis to testify without taking an oath."); *Daughtrey v. Daughtrey,* 944 So. 2d 1145, 1148 (Fla. 2d DCA 2006) ("As this court has previously observed, unsworn representations by counsel about factual matters do not have any evidentiary weight in the absence of a stipulation."); *cf. U.S. v. Hawkins*, 76 F.3d 545, 551 (4th Cir. 1996) ("Rule 603 of the Federal Rules of Evidence provides that '[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully. . . .' Thus, testimony taken from a witness who has not given an oath or affirmation to testify truthfully is inadmissible." (citation omitted)).

Here, Doran's unsworn statements were not testimonial evidence and failed to establish admissible facts. Even though the trial court relied upon Doran's Florida Bar membership to establish the veracity of his unsworn assertions, the statements were still unsworn. Accordingly, Doran's declarations were not competent evidence and should have been excluded. *See Hawkins*, 76 F.3d at 550–51 (finding that the unsworn statements of an Assistant United States Attorney were inadmissible and should not have been considered as proof of defendant's guilt); *Crockett*, 116 So. at 866 (noting that without an oath, a witness "is not a

---

[2] But "[w]hen a trial judge determines that a *child* is competent to testify, it may not be necessary for the child to take an oath." *Id.* (emphasis added).

competent witness").

C.

The second part of the rule regulating former judges is equally straightforward. Written notice must be promptly given to the parties and any appropriate tribunal to enable the tribunal to ascertain compliance with the provisions of the rule. R. Regulating Fla. Bar 4–1.12(c)(2). Here, there is no dispute that the Doran Firm failed to give written notice to Wife about Foxman joining the firm. And there was no evidence of notice to the court about Foxman's new affiliation. Thus, the Doran Firm failed to comply with Rule 4–1.12(c)(2).

IV.

Because Foxman presided "personally and substantially as a judge," he is precluded from representing Husband. And Foxman's disqualification is imputed to all of the Doran lawyers because the Firm failed to comply with Rule 4–1.12(c). Accordingly, the trial court should have disqualified the Doran Firm.

REVERSED.

LAMBERT and EDWARDS, JJ., concur.

––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––