730 So.2d 289 (1999)
Christo W. KOULISIS, M.D., Petitioner,
v.
Willie Mae RIVERS, Willie Rivers, her husband, and William Gogan, M.D., Respondents.
No. 98-1043
District Court of Appeal of Florida, Fourth District.
January 6, 1999.
*290 David W. Spicer, and Michael D. Burt of Bobo, Spicer, Ciotoli, Fulford, Bocchino, Debevoise & Le Clainche, P.A., West Palm Beach, for petitioner.
Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and Gary W. Roberts of Roberts Law Firm, West Palm Beach, for respondents.
GROSS, J.
This is a petition for writ of certiorari filed by Christo W. Koulisis, M.D., from a March 16, 1998 order denying his motion to disqualify the respondents' counsel in the proceedings below.
In the circuit court, respondents Willie Mae Rivers and Willie Rivers sued Koulisis for medical malpractice. To represent him, Koulisis retained the law firm of Bobo, Spicer, Ciotoli, Fulford, Bocchino, Debevoise & *291 Le Clainche, P.A. (Bobo, Spicer). Michael Burt was the firm attorney primarily responsible for preparing Koulisis' defense. When the case came into the office, Burt's legal secretary was Jenny Holmes. Holmes had access to all confidential and privileged information in the law firm's files in the Koulisis/Rivers case, including Burt's written evaluation of damage and liability issues. Holmes transcribed privileged information and coordinated depositions of all experts. Holmes spoke with Koulisis during the pendency of the lawsuit. She attended "team meetings" during which all substantive aspects of the case were discussed.
During Bobo, Spicer's representation of Koulisis, Holmes learned of a job opening at the Roberts Law Firm, the attorneys representing the Rivers against Koulisis. While she was performing duties for Bobo, Spicer on behalf of Koulisis, Holmes interviewed for the position with the Roberts firm, which offered her the job based on the understanding that she would not work on the Rivers case.
On February 19, 1998, Holmes advised Bobo, Spicer that she was quitting her job, but she would not identify her new employer. At Holmes' request, Bobo, Spicer allowed her to continue working there for two more weeks. Once she started her new job, the Roberts firm circulated a memo indicating that Holmes was not to be exposed to the file in the Koulisis/Rivers case. A different secretary was assigned to the case and medical files were kept in an attorney's office to isolate them from Holmes.
On March 6, 1998, Koulisis' lawyers first learned that Holmes had gone to work for the Rivers' attorneys. They moved to disqualify the Roberts firm from the case on March 9, 1998.
After an evidentiary hearing, the trial court denied the motion to disqualify the Roberts firm, concluding that the firm had "taken steps which a responsible firm should have taken to insure that there is no impropriety."
To properly analyze this case, Holmes must be viewed the same as if she had been an attorney at Bobo, Spicer assigned to handle the Koulisis case. It makes no difference that Holmes was a secretary and not an attorney. Where an employee of a law firm is privy to attorney-client confidences, "a court should not look to what tasks the employee performs so much as to his or her access to the same types of privileged materials that lawyers would receive." Esquire Care, Inc. v. Maguire, 532 So.2d 740, 741 (Fla. 2d DCA 1988). In Lackow v. Walter E. Heller & Co., Southeast, Inc., 466 So.2d 1120 (Fla. 3d DCA 1985), the third district explained the reasons not to draw a distinction between attorneys and clerical staff when it comes to the requirement that a law firm should preserve the confidences and secrets of a client:
If information provided by a client in confidence to an attorney for the purpose of obtaining legal advice could be used against the client because a member of the attorney's non-lawyer support staff left the attorney's employment, it would have a devastating effect both on the free flow of information between client and attorney and on the cost and quality of the legal services rendered by an attorney. Every departing secretary, investigator, or paralegal would be free to impart confidential information to the opposition without effective restraint. The only practical way to assure that this will not happen and to preserve public trust in the scrupulous administration of justice is to subject these "agents" of lawyers to the same disability lawyers have when they leave legal employment with confidential information.
Id. at 1123 (quoting Williams v. Trans World Airlines, Inc., 588 F.Supp. 1037, 1044 (W.D.Mo.1984)).
Because Holmes' desertion was akin to a lawyer switching to an opposing firm in the middle of a lawsuit, a motion to disqualify her new firm is subject to Rule 4-1.10(b) of the Rules Regulating the Florida Bar. See Nissan Motor Corp. in U.S.A. v. Orozco, 595 So.2d 240 (Fla. 4th DCA 1992). That rule provides:
When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a *292 firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
The scope of information protected by Rule 4-1.10(b) is broad. The rule requires disqualification when a lawyer acquired information "protected by rules 4-1.6 and 4-1.9(b)." Rule 4-1.6(a) states the general rule that a "lawyer shall not reveal information relating to representation of a client," subject to the exceptions set forth in the rule; rule 4-1.9(b) provides that a lawyer who formerly represented a client shall not thereafter "use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit ... or when the information has become generally known." (Emphasis supplied). A lawyer's work product on a case is protected as "information relating to the representation."
Applying the rule to this case, disqualification turns on the factual inquiry of whether Holmes had actual knowledge of material, confidential information. See Nissan Motor, 595 So.2d at 243-44. If Holmes had actual knowledge of protected information, the Roberts firm could not defeat disqualification by showing that they had taken steps to isolate Holmes from the Koulisis case. Rule 4-1.10(b) gives no opening for such defensive measures.
Being the firm whose disqualification is sought, the Roberts firm had to shoulder the burden of proof and demonstrate by the greater weight of the evidence that Holmes had no actual knowledge of any confidential information material to the case. See The Florida Bar Re: Amendment to Rules Regulating the Florida Bar, 605 So.2d 252, 332-333 (Fla.1992) (comment to Rule 4.1-10). Thus, once the moving party has established a prima facie case for disqualification, the burden shifts to the firm whose disqualification is sought to demonstrate that it should not be disqualified.
This allocation of the burden acknowledges the difficulty of proving what someone knows and places the procedural hurdle before the law firm that could have best avoided the ethical problem by more carefully screening a hiring decision. Imposing the burden of proof in this way means that close cases under Rule 4-1.10(b) will be decided in favor of disqualification to preserve the integrity of a fair adversary system. As the supreme court wrote in State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So.2d 630, 632 (Fla.1991):
Our legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent.
The record demonstrates that Koulisis retained Bobo, Spicer, that Holmes was the secretary primarily assigned to the case, and that she was privy to confidential information material to the case. She began to work for the opposing side in the same lawsuit. Nothing more was required to support disqualification of the Roberts firm. The trial court's conclusion that the post hiring isolation of Holmes could cure the breach in confidentiality was a departure from the essential requirements of law. We note that this is not a case where Holmes did not have access to confidential information because she worked for an attorney at Bobo, Spicer not assigned to the Koulisis case.
This case is distinguishable from J.M. Lumber, Inc. v. M.L. Builders, Inc., 706 So.2d 84 (Fla. 4th DCA 1998). In J.M., we quashed an order disqualifying an attorney from representing a client in a collection case against M.L. Builders. Over four years before, the attorney had represented M.L. Builders "in connection with [its] incorporation, real estate development activities, and some estate planning for the principals." Id. at 85. We quashed the trial court's order because there had been no finding that the matters involved in the collection case "were substantially related to the matters covered by [the attorney's] prior representation of... M.L. Builders." Id. Unlike J.M., in this case there is more than a "substantial relationship" between the legal matters handled by the competing firms; the firms are on opposite sides of the same lawsuit.
*293 In cases involving a law firm's support personnel, the second and fifth districts have "interpose[d] an additional step between the discovery of an ethical dilemma and the requirement that a law firm abandon a case...." Esquire Care, 532 So.2d at 741; see also City of Apopka v. All Corners, Inc., 701 So.2d 641 (Fla. 5th DCA 1997). The fifth district requires disqualification "only when there is evidence that the law firm obtained confidential information, thereby gaining an unfair advantage, from its new personnel." City of Apopka, 701 So.2d at 644. Esquire Care authorizes a law firm's disqualification if it is established at an evidentiary hearing that one party "has obtained an unfair advantage" as a result of obtaining confidential information, "which can only be alleviated by removal of the attorney." Esquire Care, 532 So.2d at 741 (citations omitted).
Unlike our approach in this case, neither Esquire Care nor City of Apopka applied Rule 4-1.10(b), which requires only a showing that the attorney or secretary switching firms have actual knowledge of confidential information. The two cases adopted a different test in response to a rigid rule that would have made disqualification automatic in many situations, even where support personnel had no actual knowledge of confidential information. Both cases reacted against the analysis of the third district in Lackow, 466 So.2d at 1122-23 (Fla. 3d DCA 1985) which was based on Canon 9 ("A Lawyer Should Avoid Even the Appearance of Professional Impropriety") of the Code of Professional Responsibility. The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. See K.A. W., 575 So.2d at 633 n. 2. Lackow applied the "irrefutable presumption" test to disqualification cases involving support personnel-a showing that a secretary did the primary secretarial work on a case gave rise to the irrefutable presumption that she was privy to the confidences of the client. 466 So.2d at 1123; see also K.A. W., 575 So.2d at 633-34. As we pointed out in Nissan Motor, a disqualification case falling under Rule 4-1.10(b)does not involve the application of the irrefutable presumption test. 595 So.2d at 242.
To reach its conclusion, the second district reasoned that with support personnel, a weaker presumption arises "that potentially damaging confidences are in danger of revelation, as would arise if an attorney left one employer for another." Esquire Care, 532 So.2d at 742 (citation omitted). Why such a presumption is weaker is unclear, since an attorney is subject to disciplinary proceedings for violation of client confidences, while support personnel face no similar professional risk. Either inadvertently or as part of their job, support personnel learn of matters which a client would expect to be kept confidential. Damage done by the disclosure of privileged information is not minimized because the source of the information is clerical staff and not an attorney.
The values underlying our decision are that the confidences and secrets of a client should be preserved and that a law firm and its personnel should avoid positions adverse to a client. These values are enhanced by applying Rule 4-1.10(b) without engrafting additional elements before requiring disqualification. Rule 4-1.10(b) thoughtfully balances the need for confidentiality with the competing principles that persons should have reasonable choice of legal counsel and that lawyers or support personnel should not be unreasonably hampered in forming new associations. See Comment to Rule 4-1.10, Rules Regulating the Florida Bar. Not requiring the City of Apopka or Esquire Care evidentiary showing acknowledges the practical difficulty of proving what goes on behind closed doors. Moreover, to assert the benefits of the attorney-client privilege, a client should not have to reveal secrets in order to prove that the other side has received an unfair advantage from confidential information. See K.A.W., 575 So.2d at 634.
For these reasons, we grant the writ of certiorari, quash the order by the trial court, and certify conflict with City of Apopka and Esquire Care.
DELL and TAYLOR, JJ., concur.