780 So.2d 250 (2001)
FIRST MIAMI SECURITIES, INC., a Florida corporation, Petitioner,
v.
Kurt SYLVIA, individually, and First Union Brokerage Services, Inc., a North Carolina corporation, jointly and severally, Respondents.
No. 3D00-2168.
District Court of Appeal of Florida, Third District.
February 21, 2001.
Rehearing Denied April 11, 2001.
*251 Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel D. Eaton, Miami; Richard and Richard and Dennis Richard, Miami, for petitioner.
Gallwey Gillman Curtis Vento & Horn and Karen H. Curtis and Stephen B. Gillman, Miami; LeClair Ryan and Stephen T. Gannon and Harris L. Kay (Richmond, VA), for Kurt Sylvia and First Union Brokerage Services, Inc. as pro hac vice.
Before LEVY, GODERICH, and SHEVIN, JJ.
LEVY, Judge.
First Miami Securities, Inc. ("Petitioner") files this Petition for Writ of Certiorari seeking to quash an Order granting Kurt Sylvia, et al.'s ("Respondent") Motion to Disqualify Petitioner's counsel. This matter requires this Court to adopt a standard for determining when the hiring of a nonlawyer employee of an opposing firm requires the imputed disqualification of the hiring firm. For the following reasons we grant the Petition for Writ of Certiorari, quash the trial court's Order, and remand this cause for an evidentiary hearing.
From September 24, 1999, until June 12, 2000, Elsie St. Fleur ("the secretary") was employed as a legal secretary for Respondent's law firm, Gallwey Gillman Curtis Vento & Horn, P.A. ("Respondent's firm"). During said time, the current lawsuit was initiated between Respondent and Petitioner. Petitioner was represented by Richard & Richard, P.A. ("Petitioner's firm"). According to Respondent's affidavit, the secretary was exposed to confidential attorney-client information and attorney work product relating to the instant case while she worked for Respondent's firm. On June 12, 2000, the secretary left Respondent's firm to become a legal secretary at Petitioner's firm. The circumstances surrounding her leaving are somewhat suspect. According to Respondent, the secretary gave Respondent's firm four days notice, but never returned to work. Moreover, at the time of her departure the secretary never indicated that she would be working for Petitioner's law firm.
On June 21, 2000, prior to her starting at Petitioner's law firm, Respondent's firm learned that the secretary had accepted a position with Petitioner's firm. According to Respondent's affidavit, Respondent's firm had learned through a rumor that the secretary was going to work for Petitioner's firm and then confirmed it directly with the secretary. Upon learning of the secretary's employment at Petitioner's law firm, Respondent's law firm filed a Motion to Disqualify Petitioner's firm as counsel for Petitioner. Said motion was based on allegations that the secretary was exposed to Respondent firm's confidential privileged information while she was employed by Respondent's firm and that said information was placed in danger of disclosure due to her employment at Petitioner's firm.
In contrast, Petitioner's firm contended that it had screened the secretary from working on the instant case and that, therefore, disqualification was not required. Specifically, the secretary's affidavit stated that: (1) Petitioner's firm had informed the secretary at the time of hire that she would not work on the instant case; (2) the secretary had not worked on *252 this case while at Petitioner's firm; and (3) the secretary had not discussed this case with anyone at Petitioner's firm.
On July 26, 2000, the trial court issued an Order disqualifying Petitioner's firm as counsel in this matter. The trial court's Order listed a number of factors/concerns leading to its decision to disqualify Petitioner's firm as counsel for Petitioner. However, said Order did not rely upon any case law from this, or any other, District. In so holding, the trial court stated:
9. That the undersigned is bothered by a number of factors including the fact that of the 12,000 + attorneys practicing in Miami-Dade County, Florida [the secretary] sought and obtained employment with the one firm that happened to be on the opposite side of a hotly contested lawsuit and the new employer, knowing where [the secretary] had been employed and knowing the potential problems failed to make any contact whatsoever with her former employer before hiring her.
10. That even of greater concern to the undersigned is the appearance of impropriety to the [Respondent] herein upon learning that the secretary to their attorney with whom they had shared confidential litigation information was now working for the other side.
11. That the undersigned doesn't believe that the screening process described by [the secretary's] current employer would satisfy the [Respondent's] concerns that confidential information may be shared with her new employer even if in fact it never has been or never is actually shared.
12. That the undersigned recognizes the importance of [Petitioner's] right to have its chosen counsel represent it but said counsel has himself created a situation where the concerns and appearance to [Respondent] outweighs that right.
On this petition, Petitioner alleges that the trial court erred in disqualifying Petitioner's counsel from the instant case because it had hired the secretary away from Respondent's firm. This matter requires this Court to adopt a standard for determining when the hiring of a nonlawyer employee of an opposing firm requires the imputed disqualification of the hiring firm. In particular, this Court must determine whether screening is an adequate measure to prevent such disqualification.
Over the years, other courts have adopted conflicting standards for resolving this issue based upon the relevant ethical rules and advisory opinions in existence at the time. The Second District and, most recently, the Fifth District have adopted the same disqualification standard that essentially requires: (1) a showing that the nonlawyer employee was exposed to client confidences on the underlying case while employed at the former firm; and (2) a showing that the hiring firm obtained confidential information on the underlying case from the nonlawyer employee, thereby gaining an "unfair advantage" over the former/opposing firm. See City of Apopka v. All Corners, Inc., 701 So.2d 641 (Fla. 5th DCA 1997); see also Esquire Care, Inc. v. Maguire, 532 So.2d 740 (Fla. 2d DCA 1988). In applying this test, the Second and Fifth Districts have accepted the screening of a nonlawyer employee as a viable step to prevent the imputed disqualification of the hiring firm. See City of Apopka, 701 So.2d at 644; see also Esquire Care, Inc., 532 So.2d at 741.
The First District has adopted a slightly different standard which expressly recognizes the screening of a nonlawyer employee as an adequate defense to the imputed disqualification of the hiring firm. See Stewart v. Bee-Dee Neon & Signs, Inc., 751 So.2d 196 (Fla. 1st DCA 2000). The Stewart court adopted a standard wherein, once the movant establishes that the nonlawyer employee was exposed to confidential information in the underlying case while employed at the former firm, two rebuttable presumptions are raised: "that the nonlawyer employee actually obtained confidential information material to the *253 case, and that the nonlawyer employee disclosed or will disclose such confidential information to the hiring firm." Id. at 207. The hiring firm can rebut either of these two presumptions by demonstrating either: (1) "that the nonlawyer employee did not acquire any confidential information material to the matter at issue while employed by the former firm"; or (2) "that the nonlawyer employee has not disclosed any material confidential information to the hiring firm and that the hiring firm has taken adequate measures [(i.e., screening)] to ensure that no such disclosure will occur." Id. at 207-08.
Unlike the First, Second and Fifth Districts, the Fourth District has adopted an imputed disqualification standard that does not allow for the screening of nonlawyer employees. See Koulisis v. Rivers, 730 So.2d 289 (Fla. 4th DCA 1999). Moreover, unlike the standards adopted by the other district courts, the Fourth District's standard is based on Rule 4-1.10(b) of the Rules of Professional Conduct. That rule states:
When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
R. Regulating Fla. Bar 4-1.10(b). While said rule applies to lawyers on its face, the Fourth District chose to apply the rule to nonlawyers as well, finding no reason to draw a distinction between lawyers and nonlawyers when it came to protecting the confidences of a client. See Koulisis, 730 So.2d at 291.
Based on Rule 4-1.10(b), the Koulisis court established a standard wherein, once the movant demonstrates that the nonlawyer employee was exposed to confidential information in the underlying case while employed at the former firm, the burden shifts to the hiring firm to demonstrate that the nonlawyer employee has no actual knowledge of confidential information material to the case. Id. at 292. If the hiring firm can demonstrate by the greater weight of the evidence that the nonlawyer employee has no actual knowledge of any confidential information material to the underlying case, then disqualification is not required. Id. If, however, the hiring firm does not meet this burden, it cannot defeat disqualification by showing that it took steps to screen the nonlawyer employee from the case because "Rule 4-1.10(b) gives no opening for such defensive measures". Id. The court explained:
This allocation of the burden acknowledges the difficulty of proving what someone knows and places the procedural hurdle before the law firm that could have best avoided the ethical problem by more carefully screening a hiring decision. Imposing the burden of proof in this way means that close cases under Rule 4-1.10(b) will be decided in favor of disqualification to preserve the integrity of a fair adversary system.
Id.
This Court has already adopted the Koulisis standard as the appropriate method for determining when the hiring of a lawyer from an opposing firm requires the imputed disqualification of the hiring firm. See Gaton v. Health Coalition, Inc., 745 So.2d 510 (Fla. 3d DCA 1999). In Gaton, this Court relied upon Rule 4-1.10(b) of the Rules of Professional Conduct as the controlling authority on imputed disqualification issues and applied the burden shifting test from Koulisis. Id. at 511. Having adopted this burden shifting standard as it applies to lawyers, the only question remaining is whether, as the Fourth District has chosen to do, this Court should apply this standard to nonlawyer employees as well. We find that it should. As was explained in Williams v. Trans World Airlines, Inc., 588 F.Supp. 1037, 1044 (W.D.Mo.1984):

*254 If information provided by a client in confidence to an attorney for the purpose of obtaining legal advice could be used against the client because a member of the attorney's non-lawyer support staff left the attorney's employment, it would have a devastating effect both on the free flow of information between client and attorney and on the cost and quality of the legal services rendered by an attorney. Every departing secretary, investigator, or paralegal would be free to impart confidential information to the opposition without effective restraint. The only practical way to assure that this will not happen and to preserve public trust in the scrupulous administration of justice is to subject these "agents" of lawyers to the same disability lawyers have when they leave legal employment with confidential information.
Before this Court, both parties argue that Lackow v. Walter E. Heller & Co. Southeast, Inc., 466 So.2d 1120 (Fla. 3d DCA 1985) is the controlling case from this District on the imputed disqualification issue as it applies to nonlawyer employees. However, the parties' agreement ends there as they offer widely differing interpretations of this Court's previous ruling. The parties are not alone in their confusion as this Court has not, by way of an opinion, explained or applied Lackow to any factually similar cases considering the imputed disqualification of a hiring firm based on its hiring of a nonlawyer employee from an opposing firm. However, Lackow has been discussed by the First, Second, Fourth and Fifth Districts in the aforementioned cases where those appellate courts sought to create their own disqualification standard for the hiring of a nonlawyer employee from an opposing firm. See Stewart v. Bee-Dee Neon & Signs, Inc., 751 So.2d 196 (Fla. 1st DCA 2000); Koulisis v. Rivers, 730 So.2d 289 (Fla. 4th DCA 1999); City of Apopka v. All Corners, Inc., 701 So.2d 641 (Fla. 5th DCA 1997); Esquire Care, Inc. v. Maguire, 532 So.2d 740 (Fla. 2d DCA 1988). In those cases, the courts have all read Lackow as creating a harsh standard whereby, once the nonlawyer employee has been shown to have been exposed to confidential information on the underlying case while working at the former firm, the hiring firm is automatically disqualified from the case. See Stewart, 751 So.2d at 200; Koulisis, 730 So.2d at 293; City of Apopka, 701 So.2d at 644; Esquire Care, Inc., 532 So.2d at 740. While we wholly understand how those courts may have arrived at this conclusion, we must respectfully disagree with their interpretations of Lackow.
In Lackow, this Court considered whether a former firm's right to seek disqualification of the hiring firm's counsel had been waived. The facts in Lackow were of particular importance to this Court. In that case, a secretary left the former firm and went to work for the hiring firm while a case was still pending between both firms. It was undisputed that: (1) while working for the former firm, the secretary had done the primary legal secretarial work in the underlying case; and (2) the secretary was still working on the underlying case once she began working for the hiring firm. See Lackow, 466 So.2d at 1122. The trial court denied the former firm's Motion to Disqualify the hiring firm's counsel, finding that the former firm had "unduly delayed" the filing of the motion. Id. On appeal to this Court, we found that there was an issue as to when the former firm had become aware of the secretary's employment with the hiring firm. Accordingly, this Court held that "an evidentiary hearing was required to resolve the conflict." Id.
The last full paragraph of the Lackow opinion is what has created the confusion for those attempting to derive an imputed disqualification standard from that case. In that paragraph, this Court stated:
The affidavits submitted below establish that [the secretary] had done the primary secretarial work in this case while *255 employed with the [the former] firm and, thus, was privy to confidences of [the former firm's client]. Nothing more was required to be shown to support the disqualification of [the hiring firm's] counsel in this case. Whether [the secretary] actually violated or would violate the confidences is not a subject of inquiry. Accordingly, the trial court is directed to conduct an evidentiary hearing on the motion to disqualify for the sole purpose of establishing whether [the former client] waived his right to object to the [hiring] firm's continued representation of [the hiring firm's client].
Id. (citations omitted). As stated above, other courts in this State have found that this language created a harsh rule for the imputed disqualification of the hiring firm. That misconception arises when the above paragraph is read separate and apart from the entire opinion. Indeed, at first glance, the above quoted language appears to hold that if the former secretary did the primary secretarial work on the underlying case while employed with the former firm, disqualification of the hiring firm is automatic.
However, we find that, when read in relation to the rest of the opinion, the above quoted holding in Lackow was limited to the particular facts and circumstances of that case, and did not presume to create an "overbroad", "prophylactic", "harsh" rule for disqualification to be applied in other instances involving nonlawyer employees. The Lackow Court stated that nothing more was required to support disqualification in that case. That case involved circumstances where a secretary had been exposed to confidential information on the underlying case, switched firms and then undisputedly continued to work on the same case at the hiring firm. Clearly, in such an instance the inquiry of whether or not the secretary had or would violate the confidences is not necessary.[1]
Lackow did not squarely address the disqualification issue presented to us in the instant matter and that has been considered by the other appellate courts of this State. Now, for the first time, this Court is faced with considering the standard for disqualification where: (1) a nonlawyer employee has been exposed to confidential information on an underlying case while working for the former firm; (2) the nonlawyer employee leaves the former firm to work for opposing counsel; and (3) the hiring firm screens the nonlawyer employee from working on the case in which he/she had been exposed to confidential information. In accordance with this Court's decision in Gaton v. Health Coalition, Inc., 745 So.2d 510 (Fla. 3d DCA 1999), this Court now adopts the burden shifting test from the Fourth District's Koulisis opinion as the standard in this District for determining when the hiring of a nonlawyer employee of an opposing firm requires the imputed disqualification of the hiring firm. Under this standard, actual knowledge is the focus of the inquiry and screening is not a valid defense to disqualification. See Koulisis, 730 So.2d at 292.
In this case, the trial court's Order listed a number of factors and concerns leading to its decision to disqualify Petitioner's firm as counsel for Petitioner. Said Order did not purport to apply any of the aforementioned standards for imputed disqualification, but, instead, essentially found that Petitioner's firm should be disqualified because the circumstances surrounding the hiring of the secretary did *256 not pass the "smell test". Now that we have determined an appropriate imputed disqualification standard for this District, we find it necessary to remand this cause to the trial court to take such further actions, and enter such orders as may be appropriate, consistent with this opinion.
Specifically, we remand this cause to the trial court for an evidentiary hearing. We find that Respondent's affidavit sufficiently satisfies the first element of the Koulisis standardthat the secretary was exposed to confidential information in the underlying case while employed at Respondent's law firm thereby giving rise to the rebuttable presumption that the secretary had actual knowledge of the confidential information. Because the trial court did not have the benefit of the standard that we are enunciating in this decision, the petitioner was not given the opportunity to rebut the presumption of actual knowledge. As a result, there is insufficient record evidence on the second element of said standardwhether the secretary had any actual knowledge of confidential information material to this case. Accordingly, at the evidentiary hearing, Petitioner bears the burden of demonstrating by the greater weight of the evidence that the secretary has no actual knowledge of any confidential information material to this case. If the petitioner is able to overcome the presumption by meeting its burden, then petitioner's law firm may continue to represent petitioner in these proceedings. On the other hand, if petitioner is unable to rebut the presumption by the requisite burden of proof, petitioner's law firm must then be disqualified from representing petitioner in this case due to our holding that "screening" is not a valid alternative to disqualification.
The Petition for Writ of Certiorari is granted; the trial court's Order quashed; and this cause remanded for an evidentiary hearing and such further actions and Orders as may be appropriate and consistent with this opinion. We certify conflict with the aforementioned opinions of the First, Second and Fifth District Courts of Appeal to the extent that this District's imputed disqualification standard differs from the standards adopted in those courts' opinions.
Petition granted; writ issued; order quashed; and remanded with instructions.
NOTES
[1] In any event, even if Lackow had created the bright line rule credited to it by our sister courts, we find such a rule is no longer valid because: (1) Lackow was based on Canon 9 of the Code of Professional Responsibility; (2) the Code of Professional Responsibility has since been replaced by the Rules of Professional Conduct, particularly Rule 4-1.10(b); (3) as read by our sister courts, Lackow applied an irrefutable presumption test to disqualification cases involving nonlawyer employees; and (4) Rule 4-1.10(b) does not involve the application of an irrefutable presumption test. See Koulisis, 730 So.2d at 293.