834 So.2d 221 (2002)
Christine M. SCOTT, individually, d/b/a Ricky's Coast to Coast Nets, Inc., a dissolved Florida corporation; Roger E. Douberly, individually, d/b/a Ricky's Coast to Coast Nets, Inc., a dissolved Florida corporation; and Alton Clark Rogers, Jr., jointly and severally, Petitioners,
v.
Nancy HIGGINBOTHAM, as Personal Representative of the Estate of Roy Higginbotham, deceased, Respondent.
No. 2D02-993.
District Court of Appeal of Florida, Second District.
October 11, 2002.
Valeria Hendricks of Davis & Harmon, P.A., Tampa; Sidney M. Crawford of Sidney M. Crawford, P.A., Lakeland; and Benjamin H. Hill, IV, of Akerman, Senterfitt & Edison, P.A., Tampa, for Petitioners.
George A. Vaka of Vaka, Larson & Johnson, P.L., Tampa, for Respondent.
*222 STRINGER, Judge.
Christine M. Scott, Roger E. Douberly, and Alton Clark Rogers, Jr., (collectively "Scott") seek certiorari review of the trial court's order denying their motion to disqualify co-counsel for Nancy Higginbotham. Because the trial court's order did not depart from the essential requirements of the law, we deny the petition.
Higginbotham hired Vaka, Larson & Johnson, P.L. ("the Vaka firm") for posttrial work on a personal injury case in which Higginbotham was the plaintiff and Scott was the defendant. Thereafter, Scott filed and served a motion to disqualify the Vaka firm as Higginbotham's co-counsel, alleging that the Vaka firm had recently hired attorney Andrew Klymenko as an associate. Scott maintained that they would be prejudiced because Scott had an attorney-client relationship with Klymenko when he was an associate with Akerman, Senterfitt & Edison, P.A. ("the Akerman firm") in the underlying personal injury action.
In support of the motion to disqualify, Scott filed an affidavit from attorney Benjamin H. Hill, IV, of the Akerman firm in which Hill stated that Klymenko participated in the defense of Scott. According to Hill, Klymenko's participation in the litigation included attending the depositions of two witnesses. Attached to Hill's affidavit were redacted copies of the Akerman firm's billing records reflecting the time and services Klymenko performed in Scott's case.
In response, the Vaka firm filed the affidavit of Klymenko, which stated, in pertinent part:
(6) I do not have any information relating to the representation of [Scott] that could be used to their disadvantage during litigation of the above-styled case or that has not become generally known as a matter of public record.
(7) I do not have any confidential information that would assist my current employer, [the Vaka firm], in acting as co-counsel for [Higginbotham] for the limited purpose of litigating the post-trial motions and/or an appeal, if filed.
(8) I did not develop and/or control any legal strategy in the above-styled case, nor review the strategy of others.
In his affidavit, Klymenko explained that his involvement in the case was limited to 11.6 billable hours. During that time, Klymenko traveled to conduct depositions of two police officers, performed legal research on the dangerous instrumentality doctrine, and answered basic insurance coverage questions regarding Scott's policy.
At the hearing on the motion, Hill testified that client confidences were disclosed during the course of office discussions among the attorneys about Scott's case. When asked whether he had any recollections of a specific client confidence Klymenko "knows," Hill replied that Klymenko had been included in conversations around the office about the case, but he could not specifically recall what conversations may have been shared when Klymenko was present.
The trial court subsequently denied Scott's motion to disqualify the Vaka firm. The trial court ruled that there was no evidence that Klymenko had knowledge of any confidential information from the underlying litigation at the Akerman firm. Scott filed a timely petition for certiorari with this court seeking review of the trial court's order. We have jurisdiction. See Pinebrook Towne House Ass'n, Inc. v. *223 C.E. O'Dell & Assocs., Inc., 725 So.2d 431 (Fla. 2d DCA 1999).
The disqualification of a party's attorney is "an extreme remedy and should be employed sparingly." Id. at 433. In order to merit certiorari, the order must depart from the essential requirements of the law causing material injury to the petitioner for the remainder of the proceedings and leaving no adequate appellate remedy. Id.
Cases involving imputed disqualification of a law firm based on the prior representation of a newly associated attorney are governed by rule 4-1.10(b) of the Rules Regulating the Florida Bar. Gaton v. Health Coalition, Inc., 745 So.2d 510, 511 (Fla. 3d DCA 1999); Koulisis v. Rivers, 730 So.2d 289, 293 (Fla. 4th DCA 1999); see also Graham v. Wyeth Labs. Div. of Am. Home Prods. Corp., 906 F.2d 1419, 1421-22 (10th Cir.1990) (applying the Kansas Supreme Court version of Model Rule 1.10(b), which mirrors rule 4-1.10(b)).
Rule 4-1.10(b) provides
(b) Former Clients of Newly Associated Lawyer.
When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
Rule 4-1.6(a) states that "[a] lawyer shall not reveal information relating to representation of a client," subject to some stated exceptions. Rule 4-1.9(b) provides that a lawyer who formerly represented a client shall not thereafter "use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known."
The comment to rule 4-1.10 explains in part:
Application of subdivisions (b) and (c) depends on a situation's particular facts. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.
Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by rules 4-1.6 and 4-1.9(b). Thus, if a lawyer while with 1 firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the 2 clients conflict.

R. Reg. Fla. Bar 4-1.10 comment (emphasis added). Thus, under rule 4-1.10(b), in order to establish a prima facie case for disqualification, the moving party must show that the newly associated attorney acquired confidential information in the course of the attorney's prior representation. Gaton, 745 So.2d at 511; Koulisis, 730 So.2d at 292. After the moving party meets this burden, the burden shifts to the firm whose disqualification is sought to show that the newly associated attorney has no knowledge of any material confidential information. Id.
In this case, Scott presented the testimony of attorney Hill from the Akerman firm to support its motion to disqualify the Vaka firm. Hill testified that Klymenko had been included in conversations about the case at the Akerman firm during which client confidences were disclosed. Although Hill could not recall any specific *224 confidences that were disclosed to Klymenko, the fact that Klymenko was present during conversations about the case at which confidences were disclosed should be sufficient to establish a prima facie case for disqualification under rule 4-1.10(b). However, Klymenko effectively rebutted this testimony by affirmatively stating that he did not acquire any confidential information about the case. Thus, the trial court's finding that Klymenko had not acquired any confidential information is supported by the record, and the trial court's order denying Scott's motion to disqualify the Vaka firm did not depart from the essential requirements of the law.
We reject Scott's argument that State Farm Mutual Automobile Insurance Co. v. K.A.W., 575 So.2d 630 (Fla.1991), requires the application of an "irrefutable presumption that confidences were disclosed." The irrefutable presumption only applies in the case of a direct attorney-client relationship as governed by rule 4-1.9, not in the case of an imputed disqualification as governed by rule 4-1.10(b). Gaton, 745 So.2d at 511; Koulisis, 730 So.2d at 293. Unlike K.A.W., this case does not involve a direct attorney-client relationship governed by rule 4-1.9, but involves imputed disqualification based on former clients of a newly associated lawyer governed by rule 4-1.10(b). Thus, the irrefutable presumption that confidences were disclosed does not apply.
Petition for writ of certiorari denied.
NORTHCUTT and SILBERMAN, JJ., Concur.