852 So.2d 313 (2003)
Leslie SULTAN, D.D.S., individually and Leslie Sultan, D.D.S., P.A., a Florida professional corporation, Petitioners,
v.
Michelle EARING-DOUD and Thomas Doud, her husband, Respondents.
No. 4D02-4135.
District Court of Appeal of Florida, Fourth District.
July 30, 2003.
*314 David R. Cassetty of Restani, McAllister & Cassetty, P.A., Coral Gables, for petitioners.
Diane H. Tutt of Diane H. Tutt, P.A., Plantation, for respondents.
WARNER, J.
Petitioner, Dr. Sultan, a defendant in a dental malpractice case, seeks certiorari review of the trial court's order denying his motion to strike plaintiff's expert witness and his motion to disqualify plaintiff's counsel. We conclude that the petitioner has failed to show irreparable harm not remediable on appeal as to the motion to strike. As to the disqualification of counsel, petitioner has not shown a departure from the essential requirements of law.
Respondent/plaintiff, Michelle Earing-Doud, notified petitioner/defendant Dr. Sultan of her claim against him for dental malpractice. During the statutory presuit process required under section 766.203, Florida Statutes (2000), Dr. Sultan obtained an affidavit in December 2000 from Dr. Donlon, an oral surgeon, opining that Dr. Sultan had rendered appropriate treatment to respondent. Doud was not represented by current counsel until after the presuit process terminated.
Days prior to the trial in May 2002, Doud's retained expert, Dr. Kurt Friedman, advised respondents that he could not be a witness for them. He discovered petitioner's trial counsel had represented him on a malpractice claim, and his insurance company was the same as Dr. Sultan's. *315 Thus, he was concerned about the repercussions of giving an expert opinion that petitioner had been negligent.
Doud's counsel conducted an extensive search for another expert, including contacting thirty-three potential experts as well as employing two expert witness search firms. Another law firm that also had a case against Dr. Sultan contacted Doud's counsel in August 2002 and referred him to Dr. Donlon who agreed to review the available records. Following that review, he advised counsel that he would testify that Dr. Sultan was negligent in his treatment of Doud. At no time did Dr. Donlon advise Doud's counsel of any prior involvement in the case, and the defense had never listed him as an expert witness for trial.
On August 26, 2002, Doud disclosed Dr. Donlon as her expert witness. Dr. Sultan moved to strike Dr. Donlon, arguing that Donlon was Sultan's retained expert who had previously opined that Sultan had not deviated from the standard of care. He also moved to disqualify Doud's counsel because during the presuit phase, counsel and Dr. Donlon reviewed the medical records and discussed and formulated theories and defenses for the case. Therefore, by discussing the case with Dr. Donlon, Doud's counsel obtained the defendant's work product.
In an affidavit, Doud's counsel noted his efforts to obtain an expert following Dr. Friedman's departure. He further stated Dr. Donlon never advised him that he had been consulted in regard to the case. While Dr. Donlon's affidavit appears in the presuit portion of the file, which Doud's counsel received from Doud's prior attorney, current counsel had no independent recollection of it. Finally, Dr. Donlon attested in an affidavit that he had no recollection of reviewing Doud's file in 2000 and did not remember consulting with defense counsel. If he had opined in December 2000 that Sultan was not negligent, his opinion must have been rendered on incomplete records.
Doud presented the affidavits at a hearing and argued the Legislature itself recognized that an opinion in a presuit affidavit could change with further discovery. See Cohen v. Dauphinee, 739 So.2d 68, 72 (Fla.1999). After hearing argument, the court denied both motions.
We have said that, "there are two indispensable ingredients to common law certiorari when sought to review pretrial orders of the circuit courts: (1) irreparable injury to the petitioner that cannot be corrected on final appeal (2) caused by a departure from the essential requirements of law." Bared & Co. v. McGuire, 670 So.2d 153, 156 (Fla. 4th DCA 1996). While not making any express suggestion of irreparable harm, Dr. Sultan contends that he will be placed in a difficult position in cross-examining the witness at trial.
Without discussing the certiorari standard at trial, the fifth district in Edwards v. Humana of Florida, Inc., 569 So.2d 1315 (Fla. 5th DCA 1990), granted certiorari review under similar circumstances. Edwards filed a medical negligence action against a hospital and physicians (respondents). She retained Dr. Kirsch, a neurosurgeon, to review her case and render an expert opinion. Dr. Kirsch later informed Edwards he could not give expert testimony on her behalf against the respondents. Almost three years later, counsel for one of the respondents contacted Dr. Kirsch as an expert witness, apparently without knowledge that Edwards had consulted with Dr. Kirsch. The doctor reviewed the medical records and depositions and indicated he would be able to testify on behalf of the respondent. See id. at 1316.
*316 Edwards moved to strike Dr. Kirsch alleging that "permitting him to testify placed her at a material disadvantage, if not prejudice, in cross-examination of now potentially conflicting opinion testimony, including the potential of prejudice by innuendo of the unintentional disclosure of work product." Id. Edwards relied on Florida Rule of Civil Procedure 1.280(b)(4)(B), to contend that a retained expert was still only subject to discovery by the opposing party under the "exceptional circumstances" requirement of the rule.
The Edwards court held that the clear intent of the rule was to afford protection from the discovery of a "consulting expert." Id. Such protection, however, is not dissolved by the unintentional or unknowing retention of the other party's previously hired expert. The court commented that while respondent was not at fault, the situation should not "inure to his benefit, absent the compelling circumstances articulated in Rule 1.280(b)(4)(B)." Id.
We disagree that this case is governed by Rule 1.280(b)(4)(B). First, the rule prevents discovery of facts or opinions held by a non-testifying expert retained by the opposing party. In this case, Doud's prior counsel was aware of Dr. Donlon's original opinion of no negligence. Moreover, Dr. Donlon's new opinion that Dr. Sultan was negligent was not a change in opinion based upon additional discovery during his employment with Dr. Sultan's attorney. Dr. Donlon's services had terminated prior to Doud's counsel contacting him. Secondly, counsel does not seek to prevent the discovery of Dr. Donlon's opinion but rather his trial testimony on his newly held opinions. That is not covered by Rule 1.280(b)(4)(B), and a showing of irreparable harm in permitting the testimony has not been made at this juncture. Although Dr. Sultan cites difficulties in cross-examination that Donlon's switching sides poses, without knowing what evidence is offered at trial and the trial court's rulings, we cannot determine that this harm, if any, is irreparable.
Sultan's argument also suggests that an expert's opinion is protected by the work product privilege and that use of the expert by an opposing party constitutes a violation of an absolute privilege. We conclude that the petitioner has failed to establish he is entitled to the protection. At the very least, in order for the expert's opinion to be protected, Dr. Sultan must show Dr. Donlon obtained, or was privy to, confidential communications when formulating his opinion. The record, however, does not suggest that Dr. Donlon received any confidential communications from the client, who is the one protected by the privilege. See § 90.502(2), Fla. Stat. (2002). While Sultan's counsel states that he discussed strategies and theories with Dr. Donlon, Dr. Donlon does not recall any such discussions. There also is no suggestion that Dr. Donlon's opinion was aided by any confidential communications received from petitioner's counsel. Dr. Donlon's present opinion was based upon the information Doud supplied to him, and because he has no memory of his prior dealings on this case, it appears that any opinion given in court will not be tainted by confidential work product communications.
We agree with the Oregon Supreme Court's holding in State v. Riddle, 330 Or. 471, 8 P.3d 980, 988 (2000), that the work product doctrine does not create an absolute privilege under similar circumstances. There, the defendant had employed a non-testifying accident reconstruction expert to offer his opinion as to the cause of an accident in a criminal case. At some later date, the state employed the same reconstruction expert and was allowed to introduce his testimony at trial, *317 over the defendant's objection, that his attorney had discussed potential theories of the crash with the expert. Because the expert had formulated the opinion about which he testified without relying on any privileged communication, the supreme court affirmed the trial court's ruling. See id. at 990. In doing so, it rejected the contention that the defendant was entitled to an absolute privilege which would prevent the expert from testifying. See id. While the defendant suggested that where there was evidence that the expert might have been exposed to confidential communications or attorney work product, compelling the trial court to exclude the testimony, the court disagreed. It stated:
Whether an expert's testimony will refer to, disclose, or be affected by confidential communications or work product or, instead, can be segregated from both is a question of fact, albeit a sometimes subtle and delicate one.
...
[T]he lawyer/expert relationship does not automatically disqualify an expert who was retained by one party from testifying for some other party. That expert is disqualified from testifying, however, if his or her opinion discloses, either directly or indirectly, or is based on, any confidential communication between the lawyer, the client, and/or the expert. If an expert's opinion is so bound up with any such communication that the expert cannot, in the view of the trial court, segregate his or her opinion from some part of the confidential communication, then the expert should not be permitted to testify.
Id. at 989-90.
As the Riddle court explained, the trial court not only has discretion to determine these issues and fashion appropriate remedies, it also has the ability to examine the expert in camera if necessary to determine whether the expert has in any way relied on confidential or work product information in formulating the opinions to which the expert expects to testify.
On this record, because an absolute privilege does not exist to prevent Doud from using Sultan's previously retained non-testifying expert under the circumstances of this case, we conclude no irreparable harm has occurred. Therefore, the petition for certiorari is dismissed insofar as it seeks to vacate the order denying the motion to strike Dr. Donlon as a witness.
Petitioner has also sought to disqualify respondent's counsel for his contact with the non-testifying expert. Disqualification of counsel is an extraordinary remedy ordered sparingly. See Schultz v. Schultz, 783 So.2d 329, 330 (Fla. 4th DCA 2001). The issue presented here is whether the attorney has acquired confidential information. We analogize those cases involving the hiring of a non-lawyer employee of one party's firm by the law firm representing the other party. In both circumstances, the issue is whether the firm sought to be disqualified obtained any confidential information as a result. See, e.g., Koulisis v. Rivers, 730 So.2d 289, 291 (Fla. 4th DCA 1999). In Koulisis, we noted that the moving party must first establish a prima facie case that confidential information has actually been disclosed to the hiring firm. Id. at 292. The burden then shifts to the firm whose disqualification is sought to demonstrate that it should not be disqualified. See id.; see also First Miami Sec., Inc. v. Sylvia, 780 So.2d 250, 255 (Fla. 3d DCA 2001) (adopting the burden shifting test in Koulisis and noting actual knowledge of confidential information is required to obtain disqualification).
Assuming without deciding the affidavit of Dr. Sultan's counsel constituted prima facie proof that confidential information *318 may have been disclosed regarding the defense's theories for the case, we conclude that Dr. Donlon's affidavit demonstrated he did not receive any confidential information that would give Doud an unfair informational advantage. Dr. Donlon did not recall giving an earlier opinion on the case, and his bill does not reflect any conversations with Dr. Sultan's counsel. The bill only reflects telephone calls totaling twenty minutes with Dr. Sultan's counsel's medical analyst. Based upon the affidavits presented at the hearing,[1] the trial court was within its discretion to deny the motion to disqualify counsel.
Petition dismissed in part; denied in part.
TAYLOR and HAZOURI, JJ., concur.
NOTES
[1] Dr. Sultan did not request an evidentiary hearing.