916 So.2d 943 (2005)
Samantha Brooke SOLOMON, a minor, individually; and John Solomon and Penny Solomon, individually and as natural parents and guardians on behalf of their minor child, Samantha Brooke Solomon, Petitioners,
v.
Anne E. DICKISON, M.D., Candace Giddings Koney-Laryea, M.D., Jeffrey W. Skimming, M.D., Arun Chandran, M.D., David W. Kays, M.D., Shands Teaching Hospital and Clinics, Inc., a/k/a Shands Children's Hospital at the University of Florida, Respondents.
No. 1D04-5700.
District Court of Appeal of Florida, First District.
November 30, 2005.
E. Clay Parker and Mark P. Cressman, of the Law Offices of E. Clay Parker, P.A., Orlando, for Petitioners.
Stephen H. Grimes and Susan L. Kelsey, of Holland & Knight, LLP, Tallahassee; and Rafael E. Martinez, of McEwan, *944 Martinez & Dukes, P.A., Orlando, for Respondents.
BROWNING, J.
Petitioners seek review by certiorari of the trial court's interlocutory order disqualifying their attorneys from representing them in this action. Because the trial court applied the standard under Rule 4-1.9, Rules Regulating the Florida Bar, rather than the correct standard under Rule 4-1.10(b), we grant the petition, quash the trial court's order, and remand for a determination of Respondents' motion to disqualify under Rule 4-1.10(b). Because this determination is dispositive, we refrain from addressing the consequences of the trial court's recusal.
This controversy centers around Mark Cressman's (Cressman) alleged conflicted representation of Petitioners. Previous to Cressman's representation of Petitioners, he was a member of the law firm of McEwan, Martinez & Dukes, P.A. (McEwan Firm), which represents Respondent Shands Teaching Hospital and Clinics, Inc. (Shands), and the other Respondents. During Cressman's tenure with the McEwan Firm, he represented Shands in six malpractice cases. During such tenure, this case, according to Cressman's affidavit, was mentioned on one occasion in his presence, and that of his senior partner, Mr. Martinez, by Stephanie Mullins (Mullins), Shands' claims adjustor. She told Mr. Martinez that she had received a notice of intent to initiate litigation in this case from the law offices of E. Clay Parker, P.A. (Parker Firm), and "that if the case went into litigation [Mr. Martinez] would probably receive the case as an assignment since Mr. Martinez's office and Mr. Parker's office were both in Orlando, Florida." What transpired thereafter is in sharp dispute. Mullins, by affidavit, opined she discussed this case with Cressman "regarding the facts of this case and shared strategies and discussed the damages aspect of the case with [Cressman]," and shared "confidences regarding policies and procedures and defense strategies" with Cressman in other cases. Cressman, by affidavit, denies such occurred; Cressman further opines that all Mullins said to Mr. Martinez was "that [the case] involved the care and treatment to [petitioner, Samantha Brooke Solomon, a minor]," and that she described the circumstances of the minor plaintiff in very frank terms. After this exchange, Cressman left the McEwan Firm and joined the Parker Firm, and is assisting in prosecuting this malpractice action. In response to Cressman's move to the Parker Firm, Shands moved to disqualify Cressman and the Parker Firm. The trial court, after considering only the affidavits of Mullins and Cressman, entered an order disqualifying Cressman and the Parker Firm. The trial court based its order on the rationale that Cressman was Shands' former lawyer, as a member of the McEwan Firm, and, as such, it applied the irrefutable presumption that confidences were disclosed under Rule 4-1.9 requiring disqualification of Cressman and the Parker Firm.
Our review is de novo, because the evidentiary basis of this review is by affidavit, and we deal exclusively with an application of the law to such evidence. See Walter v. Walter, 464 So.2d 538 (Fla.1985); Mgmt. Computer Controls v. Charles Perry Constr., Inc., 743 So.2d 627 (Fla. 1st DCA 1999).
This case is controlled by Rule 4-1.10(b), which provides:
Former Clients of Newly Associated Lawyer. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which *945 the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
See also Scott v. Higginbotham, 834 So.2d 221 (Fla. 2d DCA 2002); Gaton v. Health Coalition, Inc., 745 So.2d 510 (Fla. 3d DCA 1999); Nissan Motor Corp. v. Orozco, 595 So.2d 240 (Fla. 4th DCA 1992).
The Gaton opinion is instructive on the correct standard that applies to a motion for disqualification of opposing counsel who has transferred from one firm to another, raising questions of conflicted representation. There an opposing party sought disqualification of a lawyer who had actually appeared on behalf of a client and then associated with the firm representing the opposing party. The Gaton court, in addressing the applicable Rule Regulating the Florida Bar and the propriety of a lawyer's representation after transferring to another firm, as here, stated:
In cases involving a direct attorney-client relationship, the courts have recognized an irrefutable presumption that confidences were disclosed, State Farm Mutual Auto. Ins. Co. v. K.A.W., 575 So.2d 630 (Fla.1991); Boca Investors Group, Inc. v. Potash, 728 So.2d 825 (Fla. 3d DCA 1999); Garner v. Somberg, 672 So.2d 852 (Fla. 3d DCA 1996). We agree with HCI that for vicarious disqualification under rule 4-1.10(b), however, Gaton and Stiefel may not rely on this presumption. There must be a showing that the newly associated attorney acquired confidential information during his prior representation. See Koulisis v. Rivers, 730 So.2d 289 (Fla. 4th DCA 1999); Nissan, 595 So.2d 240.
* * *
The affidavits submitted in support of the disqualification motion clearly state that counsel for Gaton and Stiefel provided Lipton with "extensive background on all aspects of the case," "mental impressions on the entire matter," "strategies and how they impacted the future of the case," and "overall thoughts regarding liability, damages, and discovery of the case as a whole." This was sufficient to meet their burden of proof. Lipton's affidavit, on the other hand, does not deny that he acquired such confidential information during his prior representation, but merely states that he has "no present recollection." A failure to remember, however, does not rebut clearly set-out assertions, as here. See, e.g., Walker v. State, 742 So.2d 342 (Fla. 3d DCA 1999).
Gaton, 745 So.2d at 511 & 512. Accordingly, the Court granted the writ of certiorari and quashed the trial court's order denying the Petitioners' motion for disqualification of opposing counsel.
In contrast here, Mullins' affidavit states that Cressman acquired information protected by Rule 4-1.6 and 4-1.9(b), and Cressman's affidavit states that he did not receive any information protected by Rules 4-1.6 and 4-1.9(b) that is material to this matter. Such conflicting testimony clearly creates a dispute that required the trial court to determine whether the information received by Cressman was protected and "material to the matter," rather than base its determination on the application of the irrefutable presumption controlling an analysis under Rule 4-1.9, which is inapplicable to an analysis under Rule 4-1.10(b). See Scott; Gaton; Nissan. Thus, the trial court departed from the essential requirements of law, resulting in irreparable harm and injury to Petitioners, by disqualifying Cressman and the Parker Firm from representing Petitioners, that cannot be remedied on final appeal.
Accordingly, we GRANT the petition, QUASH the trial court's order, and REMAND *946 for a determination of Respondents' motion to disqualify Cressman and the Parker Firm under Rule 4-1.10(b).
LEWIS, J., concurs; KAHN, C.J., dissents with opinion.
KAHN, C.J., dissenting.
I agree with the majority that the trial court mistakenly applied the standard under Rule 4-1.9, Rules Regulating the Florida Bar, instead of the standard under Rule 4-1.10(b). I also have no dispute with the majority's discussion of the case law. Nevertheless, I dissent from the granting of the writ of certiorari because, even if the trial court had applied Rule 4-1.10(b), the result would be unchanged. Accordingly, further proceedings are unnecessary.
As the majority points out, under Rule 4-1.10(b), the party seeking disqualification of an opposing law firm must demonstrate that the newly associated lawyer in question actually acquired protected information. Here, viewing the record in a light most favorable to petitioner and accepting the portions of the Cressman affidavit where it differs from the Mullins affidavit, it is clear that a client confidence was indeed disclosed. Specifically, Mullins used a vividly descriptive term to describe the child's condition and, further, made comments concerning the child's course of progress while at Shands. Certainly, no risk manager would disclose such sensitive matters in the absence of a reasonable expectation of confidentiality. Accordingly, I conclude that the trial court's application of the wrong rule is of no import because, had the trial court applied the correct rule, it would have disqualified the Parker firm nonetheless.
I would deny the writ.